### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT GAINESVILLE,

### OCTOBER TERM, 1850.

Present—JOSEPH H. LUMPKIN, ⎱
        HIRAM WARNER, ⎬ Judges.
        EUGENIUS A. NISBET, ⎰

~~~~~~~~~~~~~~~~~~~

No. 31.—FRANCES GALT, *et al.* plaintiffs in error, *vs.* ABEL JACKSON, defendant.

[1.] A sale of property by J to G, and an obligation by G to re-convey the same property on certain conditions, where the transaction does not create the relation of debtor and creditor between the parties, is not a mortgage, and G will only be held to a compliance with the terms of his bond.

[2.] A conveyance of property to prevent the lien of expected judgments from attaching is illegal, and the party so transferring his property will not be aided by a Court of Equity in reclaiming it.*

[3.] Two witnesses, or one with probable circumstances, will be required to outweigh an answer asserting a fact responsively to the bill; more especially if there be three defendants all concurring in the same statement.

[4.] When the Court is requested by counsel to charge on points of law which bear upon the case, it is the duty of the Court to charge on the points.

In Equity, in Murray Superior Court. Tried before Judge WRIGHT, March Term, 1850.

—————

*See case immediately preceding this.—[REP.]

In 1845, Abel Jackson sold a negro, named Caroline, to Frances Galt for the sum of $400, and she gave to James McGehee an obligation to the effect, that if McGehee should, within one year, tender to her the same amount of $400 and the bond, that she would convey the negro, if alive, to the said McGehee, for the use and benefit of the family of the said Jackson. McGehee did not tender the money, nor claim the fulfilment of the bond, but Jackson tendered the amount, and demanded that the negro be conveyed to a third person, to whom he wished to sell her, which Mrs. Galt refused to do. Whereupon this bill was filed to compel her to convey the negro as required, if alive, and if not, to account for her value.

It appeared in evidence, that at the time Jackson sold the negro, he was in debt, and that judgments were about to be obtained against him. On the trial of the cause, defendants requested the Court to charge the Jury, that if the money paid by Frances Galt to Abel Jackson was not a loan, and did not create the relation of debtor and creditor, then the sale and bond to re-convey did not assume the character of a mortgage, but was a conditional sale, and that Mrs. Galt was only bound to comply with the express terms of her bond, and on the performance of all the conditions by the other party; and farther, that if the sale by Jackson was to defeat creditors, that Equity would not entitle him to a re-conveyance.

Which charges the Court refused to give, only saying to defendants' counsel, that if he charged at all, it would be against them.

The Jury found for complainant; whereupon defendants excepted to the refusal of the Court to charge as requested.

BROWN, for plaintiffs in error.

No one representing defendant, the cause proceeded *ex parte*.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Abel Jackson filed his bill in the Superior Court of Murray County, charging, among other things, that on the 3d day of

March, 1845, he was the owner of a negro girl, named Caroline; that being in want of $400, he mortgaged said slave to Edward M. Galt, as the agent of Frances Galt, and delivered the possession of the girl to Edward M. Galt, upon the receipt of the money; that said Galt, as agent of his mother, Frances Galt, executed a bond to re-convey said negro, provided James McGehee should, with the said bond, tender to the said Frances Galt $400 in cash, twelve months from the date of the covenant. In that event, the said Frances Galt was to make titles to the said James McGehee, to the girl Caroline, provided McGehee should want her for the use and special benefit of the family of Jackson, the complainant, and provided, also, the girl should then be alive. The bill farther charges, that McGehee had no personal interest in the transaction, and was not expected to advance the purchase money, but that the whole responsibility of redeeming the property devolved upon the complainant, Jackson; that the money was tendered, together with the bond, as stipulated, and a re-conveyance demanded, and that the same was refused, and that the girl was worth $550. The bill farther charges, that application was repeatedly made to James McGehee, to secure to the complainant and his family, the benefit of said agreement, which he has fraudulently refused to do, and that the negro has been retained in contravention of the express condition in said bond. The prayer of the bill is, that the negro may be redeemed upon the payment or tender of the purchase money, if in life, and if dead, that the parties may be decreed to pay the difference between the price paid and the true value, or the surplus of value, generally, to the complainant.

To this bill the defendants severally answered. Frances Galt states, that being in want of a girl, she authorized her son, Edward M. Galt, to buy one for her; that in accordance with said instructions, he purchased the girl Caroline, at the sum of $400, which was considered, at the time, her full worth; that she took an absolute bill of sale to the girl, and for the better securing the title, required James McGehee, the father-in-law of the vendor, to join in the warranty; that she never considered Jackson her debtor, nor was there any other understanding con-

nected with the transaction, except the bond, which her son exe-
cuted in her name, for the re-purchase of the girl, the condition
of which is set forth in substance in complainant's bill.   She
positively denies that James McGehee, or the complainant, or any
one else did, at the time specified in the bond, or at any other
time, tender to her the sum of $400, together with said bond.
She considered $400 the full value of the girl.   Negroes were
low at that time, and she purchased a likelier girl, a short time
previously, for that sum.

Edward M. Galt admits by his answer, that as the agent of his
mother, he bought Caroline of Abel Jackson, for $400, and paid
him the money, and took possession of the girl, but positively
denies that the money was advanced as a loan, but paid as the
price of the property.   He admits that, as the agent of his moth-
er, he executed the bond mentioned in the bill, for the re-sale of
the girl, upon the terms stated.   He states, that the main induce-
ment for entering into this arrangement was, to defeat the lien of
certain suits which were about maturing to judgment against
Jackson, as security for some one, whose name is not given; and
that it was well understood between the parties, that the re-con-
veyance was to be made to no one except James McGehee, as
that would defeat the only object of the bond, namely : the pro-
vision intended to be made for the use and benefit of Jackson's
family.   He admits that the bond was tendered to him, at or
about the time stipulated, but James McGehee regretted his ina-
bility to raise the money, and seemed much concerned lest the
object of the bond should fail for want of the funds.   He ad-
mits, also, that Jackson called, in company with a negro-trader,
and expressed himself ready to pay the $400, provided a title
could be made directly to this speculator.   Jackson did not pre-
tend to have the bond.   He admits that he refused to receive the
money, or to re-convey the title to any one else than James Mc-
Gehee, and for the purposes designated in the bond.   He denies
that any other tender was ever made by Jackson.   He admits
that Caroline, at the date of the sale, might, perhaps, have been
worth a fraction over $400, though negroes were very low at that

time, and girls of the same description were sold for that sum or less.

James McGehee confirms the answer of Edward M. Galt, in every important point, and states farther, that he applied to Abel Jackson to raise and furnish him with the money necessary to enable him to secure the title to the negro to his family, which he failed to procure.  He tendered the bond, without the money, but Edward M. Galt refused to re-convey on that account, but expressed himself entirely ready and willing to comply with the terms of the bond, provided the $400 were refunded.  He thinks $400, cash, was as much as the negro was worth at the time of the sale.  He denies that Abel Jackson ever applied to him to maintain his (complainant's) rights in the premises.  He admits that he did ask him for a certificate, to the effect that Caroline was as much his property *after* as *before* the transfer, which he refused to give, inasmuch as he should, by doing so, have attested a falsehood, wilfully and thoroughly.

The cause was submitted to the Jury upon the bill and answers and exhibits, to wit: the bond and bill of sale ; admissions made by the parties at the hearing, and the testimony of Alfred M. Turner, who swore that he considered Caroline worth $550, in March, 1846, twelve months after the date of the bond.

The evidence being closed on both sides, counsel for the defendant requested the Court, in writing, to charge the Jury as follows :

1st. That if the money was not advanced by way of a loan, and the relation of debtor and creditor did not exist between complainant and Frances Galt, it was not a mortgage.

2d. That if the complainant had the privilege of refunding or not, if he pleased, in twelve months, and thereby entitle himself to a re-conveyance, it was a conditional sale.

3d. That if it was a conditional sale, Equity will not relieve the complainant, unless he performed the conditions on which the privilege of refunding depended.

4th. That this could only be done by tendering the money and bond, and consenting to take a conveyance of the negro to *James McGehee, for the use and benefit of complainant's family,*

as stipulated in said bond, and that a tender of the money, with a refusal to take such conveyance as was agreed on in said bond, did not entitle the complainant to a conveyance of a different character.

5th. That if, from the evidence, the Jury believed that the object of the complainant was to defeat the lien of the judgments with which he was threatened, the contract was illegal, and that complainant, coming into Court with unclean hands, was not entitled to recover.

6th. That the answers of the defendants in relation to the value of the negro, are evidence, and that that evidence is conclusive, unless it is rebutted and destroyed by the testimony of two witnesses, or one witness, and other evidence equivalent to the testimony of another witness.

The Court refused to give the instructions as asked, but, on the contrary, replied, "Were I to charge at all, it would be against you."

To the decision of the Court, refusing to give the instructions asked, and intimating a contrary opinion of the law, counsel for the defendants excepted, and now prosecute this writ of error.

[1.] The first question to be settled is, was this contract a mortgage or a conditional sale? Chancellor *Kent* lays down this as the test of the distinction: If the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, or the money advanced was not by way of loan, and the grantor has the privilege of refunding, if he pleases, by a given time, and thereby entitling himself to a re-conveyance, it is a conditional sale. 4 *Kent's Com.* 5 ed. p. 145, *note.* And he cites *Slee vs. Marshalton Company*, 1 *Paige's Ch. Rep.* 56. *Goodman vs. Grierson*, 2 *Ball. & Bat.* 274. *Marshall, Ch. J. in Conway vs. Alexander*, 7 *Cranch*, 237. *Roberson vs. Cropsey*, 2 *Edwards' Ch. R.* 138. *Flagg vs. Mann*, 14 *Pick.* 467. 2 *Sumnor*, 534. *Holmes vs. Grant*, 8 *Paige's Rep.* 243.

Now, applying this test, either to the transaction as evidenced by the bond and bill of sale, or as confirmed by the uncontradicted corroborating testimony, is it not clear that it was a conditional

sale, and not a mortgage? The relation of debtor and creditor never did exist between Abel Jackson and Mrs. Frances Galt; nor did any debt subsist between these parties after the consummation of the contract. Suppose the girl, Caroline, had died within the twelve months from the date of the transfer, would it be pretended that Mrs. Galt would have had the right to go upon Jackson for the payment of the $400? And if she could not, this fact fixes, conclusively, the character of the agreement. It is equally plain, that Jackson could not have been compelled to redeem the property by any proceeding against him, either at Law or in Chancery, *in rem* or *in personam. Flayor vs. Lavington,* 1 *P. Will. R.* 270, '71. *King vs. King,* 3 *P. Will. R.* 360. *Longuet vs. Seamon.* 1 *Ves. R.* 406. *Mellor vs. Lees,* 2 *Atk. Reports,* 496.

This, then, being a conditional sale, and Jackson having neglected to perform the condition on which the privilege of repurchasing depended, a Court of Equity will not relieve him. It is true, that within the twelve months, James McGehee tendered the *bond,* and expressed his anxiety to have the title to the property secured to Jackson's family, but no money was paid, or offered to be paid. It is true, also, that Jackson announced that he was ready to advance the $400; but he insisted that the transfer should be absolutely and unconditionally made to a negro-trader, who accompanied him with the money for that purpose. To both of which applications, the simple and only necessary reply of Mrs. Frances Galt, or Edward M. Galt, her agent, was " *non hæc in fædera veni,*" not unto any such stipulation as these have I come. The Master of the Rolls, in *Davis vs. Thomas,* (1 *Russ. & Mylne's R.* 506,) says, " Where there is a privilege conferred, as provided the money be paid within a stated time, there, the party claiming that privilege must show that the money was paid accordingly; as in case of interest reserved on a loan, at five per cent. with a proviso, that four per cent. will be accepted, if paid within a limited time after it becomes due; or in the case of a covenant for the renewal of a lease on the payment of a certain fine at a stated period. Here it is admitted, that the rent was not duly paid at the stipulated

times, *and no fraud, surprise or accident is alleged,* the plaintiff is not entitled, therefore, to the re-purchase which he claims by his bill."

[2.] In the next place, if the object of this agreement was to defeat the judgments with which Jackson was menaced, Equity will not interpose for his relief. The general rule upon this subject is well established, and it is this—that where parties are concerned in illegal agreements, they are left without remedy against each other, provided they are both *in pari delicto*. Courts acting upon the familiar maxim, *in pari delicto portior est conditio defendentis et possidentis. Brumley vs. Smith,* Dug. Rep. 697, note. *Ib.* 698. *Vandyck vs. Herritt,* 1 *East. R.* 96. *Hanson vs. Hancock,* 8 *T. R.* 575. *Browning vs. Morris, Cow. Rep.* 790. *Osborne vs. Williams,* 18 *Ves.* 379. *Buller, N. P.* 131, '32. 1 *Fonbl. Eq. b.* 1, *ch.* 4, §4, *note y.* The object of the law is to enforce the obligations of virtue, by withholding every encouragement from wrong. There are cases, however, where transactions are repudiated on account of their being against public policy—as usurious and gaming contracts—and relief will be granted in Equity, notwithstanding it is asked by one who is *particeps criminis.* The reason is, that the public interest requires that relief should be given, and it is given to the public through the party. 1 *Story's Eq.* §298. But this is the exception to the principle already stated, and the present case does not fall within it.

[3.] As to the charge which was asked, as to the effect of the answers, we are not prepared to say that the language was too strong under the circumstances of this case ; for not only one defendant, but all three concurred in swearing that the price paid for the negro was a full equivalent at the time of the sale, and *Turner* was the only witness who gave any contradictory testimony. Two witnesses, or one witness with probable circumstances, will be required to outweigh an answer asserting a fact responsively to a bill. The reason upon which the rule stands is this—the plaintiff calls upon the defendant to answer an allegation he makes, and thereby admits the answer to be evidence. If it is testimony, it is equal to the testimony of any other wit-

ness, and as the plaintiff cannot prevail, if the balance of proof be not in his favor, he must have circumstances in addition to his single witness, in order to turn the balance; and there may be evidence, arising from circumstances, stronger than the testimony of any single witness, so that we are not prepared to say, that there has been any relaxation, of late years, in the doctrine of the Civil Law, as is usually stated to be the case, *responsio unius non omnino audiatur*, (*Code* 4, 209,) requiring the evidence of two witnesses to rebut the answer, or in the language of the instructions as prayed, the evidence of one witness, and other evidence equivalent to the testimony of another witness; and if this be the rule, where there is only one defendant, how much stronger is it where there are three, who all agree touching the matter upon which the decree is to be founded, and which is directly put in issue by the bill?

[4.] A single remark as to the refusal of the Court to charge *at all*, when asked to do so, and its reply to the request, that if it charged in the case, it would be against the defendants. We apprehend that it is the duty of all Courts, when the evidence is gone through, in the presence of the parties—the counsel and all others—to sum up the facts to the Jury, and to give them his opinion in matters of law, arising upon the evidence, (3 *Black. Com.* 375,) more especially when the Court is asked to do so. Should the Court differ from counsel, the clear presentation of the law, from the Bench, might satisfy counsel that they were in error, and the result would be an acquiescence in the opinion, as delivered. But be that as it may, the duty is imperative, and justice to counsel, clients, the Jury and the country, requires its performance.

For all these reasons, the judgment must be reversed.