## COOK *vs.* WOOD.

1. " It is not always necessary that the husband be proved to have con-
nived at the particular acts of adultery charged.   For if he suffers his
wife to live as a prostitute, and criminal intercourse with a third person
ensues, he can have no action.   It is *damnum obsque injuria.*"
2. " Passive sufferance or connivance of the husband, may also be shown
in bar of civil action."
3. " It is not necessary to show connivance at actual adultery any more
than it is necessary to prove an actual and specific act of adultery."
4. If the Court be requested, in writing, to give a legal charge, and re-
fuses upon the ground that there is no evidence to support it, when, in
fact, there is evidence, it is error; and on account of which, a new trial
will be awarded, if the point was material in the case.

Case, from Harris county.   Tried before Judge WORRILL,
October Term, 1858.

This action was brought by Henry Wood against Elijah
Cook, to recover damages of the latter for criminal conversa-
tion had with plaintiff's wife.   The defendant plead the gen-
eral issue ; and also, that for years previous to the institution
of the suit, plaintiff's wife was a person of loose habits, no-
torious bad character, and a common prostitute.

On the trial, the plaintiff proved by one Ransome Wood,
the guilt of defendant as alleged.

The defendant, on his part, proved by John Moore, that
one Tomlinson had intercourse with plaintiff's wife in 1855,
and that he witnessed the act.   By Joseph Dent, that plain-
tiff once told him that he believed Edward Nance had had
intercourse with his wife.   The witness also stated that he
once heard Wood abuse his wife and call her a whore, that
he was quite angry at that time, and greatly excited.

Thomas Moore testified, that as far back as 1855, he had
heard plaintiff say he believed Cook kept his wife, or words
to that effect; he had also heard him say Cook was the man
that had destroyed his peace and ruined his happiness at
home.   Dent stated that he knew Mrs. Wood before plain-
tiff moved to Harris, and that her character was bad.   He
also stated that plaintiff told him that when he, plaintiff,
first went to Harris, he could not borrow five dollars from
him, and he thought he was a mean man; but afterwards his

wife could get as much money from him (Cook) as she wanted, and he thought he was a very fine man.

In rebuttal, it was proved by James Biggers that he had heard things said about Mrs. Wood both ways, but knew nothing against her. That she was received into good society, and associated with the best people in the neighborhood. Moore testified that she was a member of the Baptist Church in good standing; that there were reports against her, which had caused him to watch her close, and he had never discovered anything improper in her conduct.

When the evidence closed, counsel for defendant asked the Court to charge the jury that, " it is not always necessary that the husband be proved to have connived at the particular acts of adultery charged, for if he suffers his wife to live as a prostitute, and have criminal intercourse with third persons, he can have no action—it is *damnum obsque injuria.*" This charge the Court refused to give.

The jury found a verdict for plaintiff for $2,000 00, and thereupon counsel for defendant moved for a new trial, on several grounds, of which the above refusal to charge was the chief.

The rule was refused, and counsel for defendant excepted.

MOBLY, JONES & JONES, and RAMSEY, for plaintiff in error.

B. H. HILL and D. P. HILL, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

We avoid expressing any opinion as to the size of this verdict, except to say, that according to the actual facts of the case as proven, it was an unmistakable compliment to the rare abilities of the plaintiff's counsel.

As we feel constrained to avoid a new trial, it becomes unnecessary to notice the ground on the motion for a new trial as to the witness L. W. Biggers.

We shall confine ourselves to the refusal of the Court to give the charge requested in writing by defendant's counsel, for the reason that there was no evidence to warrant it. The request was in these words: " It is not always necessary that the husband be proved to have connived at the particular

acts of adultery charged.   For if he suffers his wife to live
as a prostitute, and criminal intercourse with a third person
ensues, he can have no action.   It is *damnium obsque in-
juria.*"

It is not denied either by the Circuit Court, or the coun-
sel in argument, but the law is correctly stated.   Indeed, it
is a *verbatim* transcript from the 51st sec. of *Greenleaf in Evi-
dence;* and marked in the request as a quotation.   I beg
leave to add several additional paragraphs from the same
author:  "*Passive sufferance,* or connivance of the husband,
may also be shown, in bar both of a libel for divorce and a
civil action."   Again, " it is not necessary to show conni-
vance at actual adultery, any more than it is necessary to
prove an actual and specific act of adultery."

We ask, was there not *some evidence* enough to justify the
request made, from which the jury might have inferred, to
say the least of it, "*passive sufferance*" of the husband in the
adultery of his wife?

What is some of the testimony in this record?

Joseph Dent swears that he knew Wood and wife in Mus-
cogee county, before their removal to Harris; that Mrs.
Wood's character, for chastity, was bad.   He had a conver-
sation with Wood, her husband, in Muscogee.   He spoke of
his wife as a whore.   He abused her and her sister, Mrs.
Clem; and said he believed that they, and all the family,
were d——d whores.   This was in 1850, or 1851.   Mrs.
Wood was frequently with her sister, Mrs. Clem.   Wood
knew they associated together, and told Dent on one occa-
sion, when he met him, that his wife had come down with
him, and gone to Columbus.   Wood asked Dent on one oc-
casion, if he ever had sexual intercourse with his wife.
Wood said he believed Ed. Nance had.   He told witness on
another occasion, that when he first went to Harris county,
he could not borrow five dollars from Cook, and he thought
he was a mean man; but that afterwards his wife could get
as much money from Cook as she wanted; and he (Wood)
thought he was a very *fine man*.   At another time, when
Wood and his wife had had a difficulty, she threatened to
take the children and become a public prostitute.

Thomas G. Moore testified, that Wood said to him, that
he believed that when Clem's wife was out of fix, his (Wood's)
wife was sent down for Dames' benefit; and when his wife

was out of fix, that Clem's wife was sent up for Cook's benefit. Wood said that if Cook would settle a competency upon him and one child, he might go to the devil or Jamaica. He doubted whether more than one child was his.

John Moore swore, positively, to one act of illicit intercourse between Mrs. Wood and a man by the name of Tomlinson, of which he was an eye witness.

But I forbear any further recital of these disgusting details. These are sufficient. True, I have selected some of the strongest evidence against the plaintiff, and this is right, as the point is, was there any evidence to justify the charge asked by defendant's counsel? And when it is recollected that Mrs. Wood associated intimately with Mrs. Clem, a woman of notoriously infamous character, that her husband doubted, yea, disbelieved the legitimacy of his ostensable progeny. That he continued to live with his wife for a number of years on Cook's land, knowing, and well pleased with the fact, that she was supplied abundantly with money by him; and that he was willing to compound for the adultery, by a settlement of property upon himself and one child, might not the jury properly have inferred that the plaintiff connived at his own undoing?

It is said that we, as an Appellate Court, cannot weigh and appreciate the testimony as the Judge who presided at the trial could. And the same suggestion is frequently made, and no doubt there is some truth in it. All we have to say in response to this remark is, that the corrective is with the Legislature. Instead of compelling us to recover the judgment of the Circuit Judge upon the evidence, let his decision be final upon the facts. It would greatly relieve the labors as well as the responsibility of this Court; and perhaps might better subserve the ends of justice.

In this case, an expression of opinion upon the evidence, would have been forced upon the reviewing tribunal, under any circumstances, as the Judge refused to give a legal charge, for the reason that there was *no evidence* to support it.

This is the first action of *crim. con.* that has been before us. We trust it will be the last—especially when the *factum* of the adultery is proven by one witness only, and that witness the son of the fallen woman; and thus, instead of keeping the discovery he made, locked up in the secret cham-

bers of his own bosom, thus covering the shame and nakedness of his erring parent, or seizing the first weapon at his command and rushing upon her guilty paramour and wiped out with his heart's blood the dishonor inflicted upon the family, for which prompt and manly vindication of the household altar and the marriage bed, earth would have proclaimed, "Well done," (*Penal Code, 4th Division,* xvi. §) and Heaven would have echoed back the plaudit. Leviticus, ch. xx., verse 10. Instead of all this, Ransome Wood, from the witnesses stand, in maintenance of his father's suit for pecuniary damages, publishes and perpetuates to all coming time the sin and degradation of the mother that bore him.

Were this the case of the two men in one city—the one rich and the other poor. The rich man had exceeding many flocks and herds, but the poor man had nothing save one little ewe lamb, which he had bought and nourished up, and it grew up together with him and with his children. It did eat of his own meat and drank of his own cup, and lay in his bosom, and was unto him as a daughter. And there came a traveler unto the rich man, and he spared to take of his own flock, and of his own herd, to dress for the wayfaring man that was come unto him, but took the poor man's lamb and dressed it for the man that was come to him. I say were this that case, the wrath of every right-minded man would be exceedingly kindled. And his verdict would be, that all the wealth of Elijah Cook could not compensate the husband for this contamination of his wife. But if there is any reliance to be put in the testimony sent up in this record, this is not that case.