JOHN NADEAU *vs.* CLEOPHAS DALLAIRE.

Kennebec.       Opinion, October 23, 1933.

*Carl A. Blackington,*
*Goodspeed & Fitzpatrick,* for plaintiff.
*Joly & Marden,*
*Perkins & Weeks,* for defendant.

Sitting : Pattangall, C. J., Dunn, Sturgis, Barnes, Thaxter, J J.

Pattangall, C. J.   General motion by defendant, together with special motion based on newly discovered evidence. Action for damages for criminal conversation on the part of plaintiff's wife and defendant. As the case may be disposed of on the general motion, we are not concerned with the special motion. Evidence in support of plaintiff's claim was confined to his own testimony and that of his nephew, supplemented by a recital of events and circumstances tending to show opportunity and inclination.

An analysis of plaintiff's testimony forces the conclusion that the jury erred in its findings.

"The verdict, considering the actual facts of the case as proved, was an unmistakable compliment to the rare abilities of plaintiff's counsel." *Cook* v. *Wood*, 30 Ga., 891, 76 Am. Dec., 677.

The story of plaintiff's marital troubles as told by him may be summarized as follows. A laborer, forty years of age, father of two children, he maintained a home for his family at times and when unable to do so stored his furniture and placed the children in convent schools, thus enabling his wife to seek employment as a housekeeper. Early in the winter of 1931, while working in the woods, his wife with his consent started housekeeping in Waterville and accepted defendant as a boarder, receiving from him ten dollars weekly. This arrangement, entirely agreeable to plaintiff, had been in effect a few days when he came to the home and remained some three or four weeks, when he found work elsewhere and left to be gone for about two months, returning in the spring. Meantime the children came home and occupied a bed in the room in which defendant slept. Plaintiff remained with his family a short time, when he found work at a place some three miles away where there was a camp which he occupied in company with other laborers. He planned to be at home week-ends and occasionally during the week.

Nothing occurred to disturb the apparently pleasant relations existing between plaintiff, his wife and defendant until early summer, when on returning home about nine one evening he found the door of the house locked and sat down near some bushes, remaining there for about an hour, until his wife and defendant arrived in

defendant's automobile and entered the house. A window curtain was raised sufficiently so that he was enabled to see defendant undress and retire and he later saw his wife undress in another room than that occupied by defendant and the two children, after which she repaired to the room so occupied and joined defendant in bed.

Plaintiff then knocked on the door, hastened back to look in the window again, saw his wife leave defendant's bed and go to her own room, returned to the door, knocked again and was admitted by the wife. Defendant came out into the kitchen where they were, partially if not fully dressed, and a casual conversation occurred between the three. After remaining something less than an hour, plaintiff left to return to the camp, giving as his reason for not remaining until morning that if he did so he would be obliged to leave very early on account of his work.

On Saturday night plaintiff came home again, the incident related above having occurred on Wednesday, and at that time remained until Monday morning. During the evening of Saturday, he told his wife and defendant what he had seen on Wednesday. At first they both denied and then admitted the truth of the accusation. Asked if "anything took place at that time," i.e., during the week-end, plaintiff answered, "No." Husband and wife occupied the same bed Saturday night and Sunday, and on Monday morning plaintiff returned to his work, apparently on amicable terms with his wife and defendant, and quite content to leave them together with the children.

The following Saturday plaintiff came home again. He and his wife retired, occupying the same bed. After a time she left the bed and room, and a little later he arose and, going into the bedroom where defendant and the children were, found his wife in bed with defendant. Plaintiff then went back to his own bed and says that he saw no more of defendant that night. As to whether or not he later saw his wife, the record is silent. Apparently the incident provoked no comment on the part of any of the parties involved.

Again, perhaps a month later, he was at home, again he and his wife retired together, and again he woke, found his wife gone, saw a light in the kitchen, arose and went into the lighted room, where he discovered defendant and his wife, garbed only in their

undershirts, engaged in sexual intercourse on the kitchen floor. When he appeared on the scene, his wife said, "You caught us good that time"; and he replied, "I should say I caught you." He then "took a drink of water and went back to bed," where he remained until morning, leaving the others in the kitchen. There was no talk between plaintiff and defendant until about a month later when he returned from a two weeks trip in the woods and discussed matters with defendant, who agreed "to behave himself," whereupon plaintiff returned to the woods, stayed until September, came home, broke up housekeeping and separated from his wife. Something over a year later, this suit was brought.

It may be that this remarkable story is true. The jurors accepted it and, as has often been said, they saw and heard the witnesses and are to judge of their credibility. The difficulty to be overcome in these proceedings, however, is not settled by merely applying to the case the wise and well established rule that the jury is the final arbiter in matters of fact, when acting without apparent bias or prejudice and understandingly. The more serious question arising before us is whether, even if the credulity of the Court may be strained to the point of accepting plaintiff's narrative thus endorsed by the jury, a verdict based upon it may properly be maintained.

A husband's connivance at the adulterous intercourse of his wife will bar him from maintaining an action against the participant in her improper conduct. Passive sufferance or connivance of the husband may be shown in bar of such an action, the proof of which may be made out by a train of conduct and circumstances. It is not necessary to prove an actual and specific fact of adultery even, and if a system of connivance at improper familiarity, almost amounting to proximate acts, be established, the Court will assume a corrupt intent as to the result. 2 Greenleaf on Evidence (1st Ed.) 39.

While the question of connivance is primarily of fact for the jury, it is not ordinarily susceptible of proof as an independent fact but is usually established as a conclusion from a line of conduct pursued by the husband in relation to his wife's intercourse with the party from whom he claims damages.

"Connivance may be the passive permitting of adultery or other misconduct as well as the active procuring of the commission." *Dennis* v. *Dennis*, 68 Conn., 194, 36 Atl., 36.

"If his conduct as established by undisputed evidence or admitted in his own testimony is such that a rational mind could draw no other conclusion therefrom than that he had consented actively or passively to the conduct of which he complained on the part of his wife and defendant, the question would become one of law for the Court, which in that event would not only be justified in taking the case from the jury but it would become its duty to do so." *Kohlhoss* v. *Mobley* (Md., 1905), 62 Atl., 236.

We have rehearsed the testimony of plaintiff at length in order that it may be clear that the case falls within the rules quoted. If plaintiff's testimony is accepted as the truth, he is guilty of connivance. If it is rejected as false, he is guilty of perjury. On either alternative, the verdict must be set aside.

*Motion sustained.*