26736. TATUM *v.* THE STATE.

850

Decided April 26, 1938.

*Edwards & Edwards,* for plaintiff in error.

*Hal C. Hutchens, solicitor-general,* contra.

MacIntyre, J.  Luther Tatum was indicted for the murder of Sam Hunt and convicted of voluntary manslaughter.  He made a motion for new trial which was overruled, and to that judgment he excepts.

Special ground 1 complains because the judge charged the jury as follows:  "I desire to charge you, gentlemen, on a further rule of law.  Proof of the violent and turbulent character of the deceased is admissible only when it is shown prima facie that the deceased was the assailant, and that the accused had been assaulted, and that the defendant was honestly seeking to defend himself."  The judge had elsewhere in his charge stated the general law on self-defense, and also the law of self-defense as applied to the fears of a reasonable man, and then charged the excerpt here

complained of which excerpt is (except that it includes only the singular number), in the language of the decision in *Crawley* v. *State,* supra, and under its facts the instant case is controlled adversely to the defendant by the *Crawley* case.

■ Special ground 2 complains of the following excerpt of the charge which immediately follows the excerpt complained of in special ground 1: "But if you find from the evidence that the defendant was the aggressor, and that the defendant overtook the deceased, or was pursuing the deceased at the time, and that the deceased was not attacking the defendant at the time of the shooting, then of course you would not consider or give any weight whatever to the question of character for turbulence and violence of the deceased." With reference to this ground, the court seems to have been further following the principle of law laid down in the *Crawley* case, supra, but the defendant complains of this part of the charge on the ground that there is no evidence upon which to base it.

The record discloses that there was evidence that the defendant, a tenant of the deceased, desired to enter the tenant house which he and his family were occupying and remove therefrom his·personal goods, and that the deceased forbade the defendant or any one with him from entering the house for this purpose until his account had been paid. There was a discussion and disagreement over this matter. Hunt went to his house and came back with a shotgun and stated to the whole crowd, "Don't any of you touch anything in the house." No statement was made direct to Tatum, and no motion, move, or threat was made to Tatum. After saying this, Hunt sat down on a table under the tool shed, and Tatum followed him or moved over to where he was, when Hunt moved further away and sat down on a wagon tongue, to which point Tatum followed him, keeping his hands in his overall pocket. About forty minutes elapsed between the arrival of the truck and the shooting, during which time Hunt was engaged in joking and laughing over a truck under the shed which he priced for sale and discussed in good humor the cause of a broken wind-shield. Finally, after Tatum followed Hunt to his seat on the wagon tongue with the statement that he could not see where he owed him anything, and that he would like to see Hunt's book again, at which time Hunt said "You can all go to the house and see it, my books·are

wide open." Hunt got up and walked away from Tatum to Pete Jackson at Savage's truck and asked Jackson if he was through working his cotton crop, to which Jackson replied that he was, and Hunt made a trade with Jackson to come the next day, bring his children, and hoe for Hunt; then turned and, without saying anything to Tatum, walked straight to his house. Mrs. E. L. Whitten, sister of S. M. Hunt, was sitting on the back porch facing Tatum's house and heard Sam Hunt say as he approached, "I would not hurt no man's feelings at his house, just come and look at the books." This was before he left the truck. Hunt walked from Pete Jackson straight to the house, without saying anything, with his gun barrel down and stock up back of his shoulder pit. Tatum, alone, followed him with his hands in his pockets to a point about three steps from the back porch to a row of evergreen bushes, and Mrs. Whitten asked Hunt as he approached if he wanted her to get the book. Hunt said "Yes," and Mrs. Whitten walked to the back door and went in. According to all the witnesses except Raymond Savage, Hunt did not look back or turn around as he reached the corner of the bushes, at which point Tatum was about two steps behind. Columbus Wood in substance testified that Tatum pulled a blue looking pistol from his pocket, stuck it in Hunt's back, and fired four times without Hunt seeing or knowing the gun was in his back. Three of the bullets entered Hunt's back a few inches apart, two of which inflicted wounds showing considerable *powder burns on his skin,* having gone through his clothes.

Where the evidence discloses that during this discussion they were in the locality of the tenant house, that the deceased moved his position several times, each time he moved the defendant would follow or move to where he was, that the discussion would be renewed, that finally they agreed to go to the home of the deceased, a short distance away, and look at his book, that the defendant walked two or three steps behind the deceased, and just before they got to the home shot him three times in the back, and that he approached so near to him at the time of the shooting that there were powder burns on the back of the deceased, and where it further appears that the judge, in the excerpt of the charge here complained of, used the word "pursue" where the word "follow" might have been more appropriate, we do not think this constituted re-

versible error. One of the definitions in the 1924 edition of the New Standard Dictionary, Funk & Wagnall, of the word "pursue" is "to attend upon; to keep company with; accompany. . . To follow;" and the word "pursuer" is therein defined as "one who pursues; one who follows in order to overtake."

■ Special ground 3 complains because the court refused, on written request, to charge: "The defendant had the right to remove the personal goods from the house that he was occupying and any act on the part of the deceased, Sam Hunt, would be unlawful if there was any interference on the part of the deceased." In 1 Reed's Branson on Instructions to Juries (3d ed.), 438, § 157, it is said: "The court may refuse requests which need qualifications, modification or restriction. It has been said that unless the charge ought to be given in the very terms in which requested, it should be refused altogether. The trial court is not under any obligation to rewrite an instruction which either party requests to be given." In this case, where the defendant was charged with murder, the requested charge directed special attention to the evidence as to the right of the defendant to remove personal goods from the house that he was occupying, and stated too broadly that *any act* on the part of the deceased, Sam Hunt, would be unlawful if there was any interference on the part of the deceased. Thus we think the request to charge was too inaccurately stated, in attempting to apply the principles stated in the third special ground of the motion for new trial, in that it directed special attention to the evidence on the issue of the defendant's right to remove the personal goods without respect to the other evidence, and there was no error in refusing to charge as requested. *Jones v. State,* 147 *Ga.* 356 (4) (94 S. E. 248); Kriener *v.* U. S., 11 Fed. (2d) 722 (10); Jackson *v.* U. S., 48 App. D. C. 272. Moreover, on this phase of the case, with reference to the entering of the tenant house occupied by the defendant on the place of the deceased for the purpose of removing personal goods of the tenant therefrom, the judge charged the jury as follows: "Of course if you find that at the time the defendant was endeavoring to enter his own home or to occupy his home for any purpose whatever, rightfully, and the deceased was endeavoring to prevent such, and was in that act at the time of the shooting, of course you would consider that. A man has a right to enter his own home. He has a

right to prevent another from entering his home unlawfully and all that. One has as much right to protect his home against an intruder, he has a right to evict an intruder from his home, . . provided the person is endeavoring to enter the home for an unlawful purpose. If you find at the time of the killing the defendant and the deceased were at the defendant's home, and the altercation they had, if they had any, had been abandoned, and they were endeavoring to settle the dispute peacefully and without any further trouble, and that was the mental attitude of both of the parties at the time, and you find that the defendant killed the deceased on account of any past act at his home and that it was done in a spirit of revenge, you would of course find him guilty of murder, he would not be justified." There were no exceptions to this part of the charge and the refusal to give the requested charge was not reversible error.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*