## 29553. BENNETT *v*. THE STATE.

Decided May 2, 1942. Rehearing denied May 21, 1942.

386

*Eldon L. Bowen, Lee S. Purdom,* for plaintiff in error.
*Dave M. Parker, solicitor-general,* contra.

GARDNER, J. We will deal with the special grounds first, in their order.

■ Grounds 1, 2, and 3 will be treated together. They deal with errors assigned on drawing, summoning, and placing on the defendant, over his objections, tales jurors. These grounds are:

"First: Because the court erred [in] summoning 22 extra jurors when the panel to try the defendant was being made up, by not giving officers sufficient time for the officers to summons and get into court, before compelling defendant to complete the jury to try his case. Second: Because the court compelled defendant to complete the jury to try his case before all of said 22 jurors came into court. Third: Because the court erred by compelling defendant to complete his jury by striking from a panel made up of a few jurors who happened to live near town, and got into court before the first jurors drawn could be summoned and get to the courtroom." We will deal with these grounds on their merits, assuming they are sufficient in law. In allowing these grounds of the amendment to the motion the judge ordered filed an explanation as a part of the record. From the grounds themselves we can not get a picture of what happened, but by reference to the certificate of explanation of the judge we get a very concise and clear picture. We quote his explanation:

"As to the first, second and third grounds of the amended motion, all of which relate to the same matter, when the panels of jurors regularly drawn and summoned for service at the November term, 1941, of Pierce County superior court were exhausted,

and it became necessary to summons more jurors for the trial of said case, the court called for the jury box and proceeded to draw from the box a number of additional jurors for the trial of said case. At that time it appeared to the court that the entire jury had been selected with the exception of one juror; that the State had exercised all of its strikes except one; that the defendant had exercised all of his strikes except one; and the court drew twenty-two additional jurors' names from the jury box and ordered the bailiffs of the court to subpœna said jurors to court and have them in court if possible by two o'clock. It further appeared to the court that at two o'clock, or a few minutes thereafter, the list of jurors as drawn from the box was called by the clerk, and it further appeared that of the list of jurors—those drawn from the box —as called by the clerk in open court, five jurors who were drawn from the box out of the number drawn answered to their names, and the court required said jurors to come forward and be qualified, in the order in which they were drawn from the box, and put upon the defendant, it being the opinion of the court that the judge of said court can have a list of the jurors thus drawn made up in his discretion and called in the order in which they were drawn from the box, and the objection to the jurors as so drawn and put upon the defendant made by him was overruled. The last juror accepted by the State and by the defendant in said case, which made up the panel of twelve to try said case, was one of those drawn from the box in open court and summoned by the bailiffs, and was one of the first half of the total number of jurors so drawn and summoned. This last juror was accepted after both the State and the defendant had exhausted their strikes. M. D. Dickerson, Judge, Pierce superior court."

Before the act of May 31, 1937 (Ga. Laws 1937, p. 466) the last clause in Code § 59-801 read as follows: "In making up said panel of 48 jurors, or successive panels of any number, the presiding judge may draw the tales jurors from the jury boxes of the county and order the sheriff to summon them, or he may order the sheriff to summon tales jurors from among persons qualified by law to serve as jurors." The act of 1937 amended this portion of this section to read as follows: "In making up said panel of 48 jurors, or successive panels of any number, the presiding judge shall draw the tales jurors from the jury boxes of the county and order the sheriff to summon them."

The only change made in this portion of the section above quoted by the act of 1937 is that, before the act, when it became necessary to make a panel of 48 jurors, or successive panels of any number of jurors, the judge had the discretion either to draw the jurors from the box or order the sheriff to summons tales jurors from among those qualified to serve as jurors without the judge first drawing them from the box. The provisions of the act of 1937 require that in making up such panels the judge shall draw the names from the box. The act took away the discretion of the court as to having the sheriff summons such tales jurors without first drawing them from the box as provided by the law for the drawing of jurors. No doubt the legislature was moved to pass this act to relieve the courts from the embarrassment and criticism that had become prevalent under the old system of oftentimes filling the panel with what are generally known as "professional jurors." This act relieved the courts and the sheriffs of much embarrassment which had grown up under the old system. Oftentimes there were jurors who were always present, ready to serve and requesting to serve. Oftentimes the sheriff had no recourse but to summons them, except under great embarrassment. From the trial court's standpoint it would appear to a large number of the people that for the court to draw tales jurors from the box, many of whom might not be very easily summoned, it was unnecessary delay and expense to adjourn court in order to draw jurors from the box and serve them, when the law provided that all the judge would have to do was to order the sheriff to summons such number as the court thought necessary to complete the panel. Whether or not these were the reasons which prompted the legislature in the passage of the act of 1937, it was never intended to interfere with the discretion as to what number the court thought necessary to draw or impanel, or to require the judge to delay the trial for the purpose of having summoned and present any particular number drawn or summoned. From experience the writer knows that it would be unreasonable to construe the law of this State to mean that, in making up the original panel of 48 jurors in a felony case, or in making up a successive panel of any number in the selection of a jury, the judge should delay the proceedings until a report had been received from the sheriff as to whether or not all of the jurors thus drawn had been summoned. Under the facts of this

case the learned and experienced judge correctly interpreted the statute. He committed no error in denying a new trial on this ground.

■ Ground 4 complains that the court erred in failing to give a timely written request to charge. We deem it necessary, for a clear understanding and discussion, to set out the ground as it appears in the record: "Because the court erred by refusing to charge the following request, the same having been submitted in writing before the jury had retired to consider the case, to wit: 'The following inclosure shall be deemed and held to be a lawful fence: any inclosure made by stretching not less than six horizontal strands of barbed wire between posts firmly set in the ground or between growing trees not more than ten feet apart, the bottom wire to be not more than four inches from the ground, the next wire to be not more than four inches from the first, the next wire to be not more than six inches from the second, the next wire to be not more than eight inches from the third, the next wire to be not more than ten inches from the fourth, the next topmost wire to be not less than four and one-half feet from the ground, with a plank strip not less than four inches in width either above or below the topmost wire. All fences known as woven wire fence constructed of substantial wires of size and weight not less than quality known as American or Page number 12 wire, and of not less than 10 strands of horizontal wires securely stayed by vertical wires of not more than 12 inches, and with spaces between the horizontal wires as follows: first wire not more than three inches from the general surface of the ground; first, second and third spaces not more than four inches; fourth, fifth, and sixth spaces not more than five and one-half inches; and the remaining spaces not more than nine inches; the total height of the fence from top will be not less than four feet. Fences constructed as above of woven wire of less height than four feet, and not lower than 26 inches, with horizontal strands or barbed wire above, and with horizontal spaces from barbed wire to woven wire not over 12 inches, the top barb being not less than four feet from the ground, shall be deemed lawful fences: Provided, said fences are tightly stretched and securely fastened to trees or posts firmly set in the ground, not more than one rod apart. This section shall not apply to any county in which the "no fence" or stock law is in operation.' (Code § 62-403.)"

Should it be considered that the assignment of error in this ground is sufficient in law to constitute a proper assignment in a motion for new trial, as ruled in the cases of *Monroe* v. *Warten Cotton Co.,* 29 *Ga. App.* 358 (115 S. E. 279), *Killabrew* v. *State,* 26 *Ga. App.* 231 (2) (105 S. E. 711), *Coney* v. *State,* 30 *Ga. App.* 132 (4) (117 S. E. 99), and other decisions to the same effect, still we do not think the request itself so met the requirements of the law in regard to completeness as to be the basis for a reversal because it was refused. It occurs to us that we might state, without fear of successful contradiction, that if the court had charged the request as written he would have then been obliged, under the facts of this case, to enter into a detailed explanation of legal principles which, by charging the request, would have arisen. To simply charge the request as written might have impressed the jury that, if the deceased did not have his crops enclosed by a fence of the specifications contained in the Code section requested to be charged, the defendant ipso facto would have had a lawful right to take the life of the deceased, under the evidence in the case. This is not the law as applied to the State's evidence in the instant case. To state it differently, the request was incomplete within itself.

It was held in *Etheridge* v. *Hobbs,* 77 *Ga.* 531, 534 (3 S. E. 251) : "We have frequently held that a request must be perfect in itself; and if not, the court should refuse the same." This court held in *Davenport* v. *Waters,* 40 *Ga. App.* 99 (4) (148 S. E. 772) : "The court is not required to give a requested instruction not perfect in form; and a request that depends upon an inference to make it correct is not perfect." Also, in *Bridges* v. *Donalson,* 165 *Ga.* 228, 233 (140 S. E. 497) : "A request for instruction to the jury must be correct as a whole. It should be perfect in itself, or the court should refuse it." In *Tatum* v. *State,* 57 *Ga. App.* 849, 853 (197 S. E. 51), this court approved the following statement from 1 Reed's Branson on Instructions to Juries (3d ed.), 438, § 157 : "The court may refuse requests which need qualifications, modification, or restriction. It has been said that unless the charge ought to be given in the very terms in which requested, it should be refused altogether. The trial court is not under any obligation to rewrite an instruction which either party requests to be given." See *Davis* v. *State,* 153 *Ga.* 669, 678 (113 S. E. 11).

We have considered carefully the contention of the defendant

that the court committed error in refusing to give in charge the written request which he made. The cases which he cites are: *Galt* v. *Jackson,* 9 *Ga.* 151 (4); *Lamb* v. *Girtman,* 26 *Ga.* 625; *Akin* v. *Ordinary of Bartow County,* 54 *Ga.* 59, 60 (10); *County of Macon* v. *Chapman,* 74 *Ga.* 107 (2); *Central of Georgia Railway Co.* v. *Bond,* 111 *Ga.* 13 (9)` (36 S. E. 299); *Cook* v. *Wood,* 30 *Ga.* 891 (14) (76 Am. D. 677). A careful reading of these decisions will reveal that there is no conflict in the rulings there made with the cases which we have cited to the effect that the charge requested was lacking in that degree of sufficiency which the law requires to be the basis of a reversal on the ground that the court refused such request. A full reading of all cases cited above on this issue is convincing that the court committed no error in refusing the request, under the facts of this case and under the able charge of the trial court. The issue and the evidence pertaining to the subject-matter of the request to charge involved a collateral and not the main issue. We find no merit in this assignment of error.

As to the general grounds, the evidence was sufficient to sustain the verdict.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*