WILLIAM H. BOWDLE v. THE DETROIT STREET RAILWAY . COMPANY.

*Witnesses—Mental competency—Instructions to jury—Husband and wife—Loss of services—Damages—Negligence— Proximate cause.*

1. Upon objection being made that a witness is mentally incom-- petent to testify, it is the duty of the court to examine the- witness, and such testimony as is proper in regard to his. mental condition, and determine the question of his compe- tency.

2. In a suit by a husband to recover damages for the loss of the services and society of his wife, who was injured while alighting from one of the defendant's cars, the wife was sworn as a witness for the plaintiff, without objection as to her mental competency to testify. The question was not raised while she was testifying, but during the trial testimony on that subject was introduced by the defendant. The court instructed the jury that the latter testimony was received for the purpose of showing them, or allowing them to judge, as to how long the plaintiff might be deprived of the society of his wife, or of her labor as a wife, in the discharge of her domestic duties, and for no other purpose; that they were at liberty to investigate all the proof offered on the subject; that, if they should find that at the time of giving her testimony the wife was without sufficient mental capacity to understand what was going on, they were not at liberty to consider her testimony at all, but if they should conclude that she was sane, and capable of knowing what she was doing and saying, and of remembering what transpired at the time of the accident, they should consider her testimony, and might also consider it in connection with the permanent character of the injury, and in weighing the testimony of the expert witnesses in the case, who, as the evidence tended to show, had testified on a previous occasion that the wife would be permanently insane. And it is held that there was no error in the instruction.

3. The declaration averred that, because of the injury sustained, the plaintiff had since the accident been deprived, and would during the life of his wife be deprived, of the comfort, fellowship, society, aid, and assistance of his wife in his domestic affairs. And it is held that the plaintiff was properly limited in his recovery to the value of such services as the wife would have been likely to render in the discharge of her domestic duties.

4. It appeared from the testimony that, after receiving the injury, plaintiff's wife lived with her mother; that plaintiff was not living in the same house, but their separation, so far as the record showed, was not the result of domestic troubles, nor was it an abandonment, but by reason of the inability of the husband to get work in the city where his wife's mother lived, and his consequent absence to find work elsewhere. And it is held that if, because of such injury, the plaintiff was not able to support his wife in her then condition, that fact would not defeat recovery for the loss of her services.

5. Where, in an action for injuries sustained while alighting from a street car, the grounds of negligence alleged are that the
103 MICH.—18.

car was started while the passenger was standing on the steps, and that a chain with a hook attached, which caught her dress and dragged her with the car, was permitted to hang near the steps, it is error to instruct the jury that the defendant is not liable if the hook was but recently displaced by a passenger, without further directing them that they must also find the hook to have been the sole or proximate cause of the accident in order to exonerate the defendant.

Error to Wayne.   (Frazer, J.)   Argued October 12, 1894.   Decided December 22, 1894.

Case.   Plaintiff brings error.   Reversed.   The facts are stated in the opinions.

*Moore & Moore,* for appellant.

*Sidney T. Miller* (*Brennan & Donnelly,* of counsel), for defendant.

GRANT, J.   1. The principal question in this case arises upon the following instruction of the court to the jury:

" I allowed this testimony to be introduced as to the mental condition of this woman for the purpose of showing you, or allowing you to judge, as to how long her husband might be deprived of her society, or of her labor as a wife, in the discharge of her domestic duties in the household, and for no other purpose.   You are at liberty to investigate all the proof in this case that has been offered to you as to whether this woman is sane or insane. I charge you that, if you shall find that now this woman is without sufficient mental capacity to understand what is going on, you are not at liberty then to consider her testimony in this case at all, for you are only at liberty to consider the testimony of a person who is *compos mentis,* or of sound mind; for a person who is without sound mind, capable of remembering or giving testimony in a case, is not to be allowed in a court of justice.   One of the physicians here testified that she was insane now.   If you shall come to that conclusion, then you are not at liberty to regard her testimony at all in this controversy; but if you shall have arrived at the conclusion that she is sane now and capable

of knowing what she is doing and saying, and of remembering what transpired at the time this accident occurred or this injury happened, then you are to consider her testimony, and you are at liberty to consider it in connection with the permanent character of this injury, and also in weighing the testimony of the expert witnesses who have been produced in this case, who, there is some evidence to show, testified on a previous occasion that this woman would be permanently insane."

No question was raised as to the competency of this witness at the time she was sworn, nor at any time during the giving of her testimony. One of the grounds upon which recovery was sought by the declaration is that she had become "completely and permanently insane." If such preliminary question had been raised, it would then have been the duty of the court to examine her, and such testimony as was proper in regard to her condition, and determine whether she was competent to be sworn. Some authorities have said that the preliminary question in such cases is, "Is the witness capable when sworn of understanding the nature of an oath?" To this some authorities add that he must be able to understand the subject with respect to which he is required to testify. When this preliminary question is passed, and the court has determined that the witness is competent to testify, the entire controversy is then transferred to the jury. The court may not say to the jury that the witness is or is not entitled to credence. The jury may reject the testimony entirely or may attach whatever weight to it they choose. We are cited to no authority which holds that it is incorrect to instruct the jury that, if they shall determine from the evidence that a witness is so insane as not to comprehend or be able to understand what she is doing and saying, and to remember what has transpired in regard to the subject about which she is testifying, they should reject her testimony altogether. Such holding, in

my judgment, would be a clear usurpation of the province of the jury. It would, in effect, be saying to them, "The witness is entitled to some credence, and it is for you to say how much." The preliminary decision of the court means nothing of the kind. The court simply decides that the witness is competent to testify, upon testimony not introduced for the consideration of the jury, but of the court. Afterwards, as in this case, testimony is introduced as to her mental condition, and her own testimony and demeanor and appearance are before the jury, and the question of her competency must then be determined by them when the evidence is conflicting.

It is entirely clear that one clause of the instruction, standing alone, would be error, viz.:

"One of the physicians here testified that she was insane now. If you shall come to that conclusion, then you are not at liberty to regard her testimony at all in this controversy."

The language following, however, restricts the above, and clearly conveys the meaning of the learned circuit judge, viz., that if she was then capable of knowing what she was doing and saying, and remembering what transpired at the time of the accident, then the jury were to consider her testimony. In determining the question the jury were further very properly told that they must consider all the testimony in the case, and, if they found that she was capable of understanding, they should give her testimony due weight; if they found, on the contrary, that she was not, then they should reject it. I think this states the true rule.

In *Reg. v. Hill*, 5 Eng. Law & Eq. 547, speaking upon this precise question, the court said:

"If his evidence had, in the course of the trial, been so tainted with insanity as to be unworthy of credit, it

was the proper function of the jury to disregard it and not to act upon it." [1]

This is quoted in *Coleman v. Com.*, 25 Grat. 876, and is recognized as the sound and reasonable rule. This is the rule to be deduced from the language of the court in *Reg. v. Hill*, 5 Cox, Cr. Cas. 259. In that case Lord Campbell, C. J., says:

"The lunatic may be examined himself that his state of mind may be discovered, and witnesses may be adduced to show in what state of sanity or insanity he actually is; still, if he can stand the test proposed, the jury must determine all the rest."

To the same effect are *City of Gainesville v. Caldwell*, 81 Ga. 76, and *Worthington v. Mencer*, 96 Ala. 310.

The case of *Mead v. Harris*, 101 Mich. 585, is not in conflict with this rule. In that case the preliminary question was raised before the witness was sworn, and the court said that he would instruct the jury that, if they found that the witness was mentally incompetent, they should consider her testimony of no value; and the decision went no further than to hold that it was the duty of the court to determine, in the first instance, whether the witness was competent to testify, before the question could be submitted to the jury. I do not wish to be understood as holding that it is competent to introduce testimony of insanity to impeach the credibility of a witness. That question is not involved. I find no error in this instruction of the court.

2. Two grounds of negligence were alleged:

(1) That the car was negligently started while plaintiff's wife was standing on the last step.

(2) That the chain with a hook at the end was negligently permitted to hang from the platform near the steps.

---

[1] The precise language quoted is from the case as reported in 20 L. J. (N. S.) 226.

The court instructed the jury that, if the hook was in the proper place when the car left the city hall, and was displaced by Mrs. Bowdle or some other passenger, and by hanging caught Mrs. Bowdle's dress, then she could not recover. This charge would have been proper if the court had further instructed the jury that the defendant would not be liable if the hook was the sole or proximate cause of the accident. But the instruction left out the other negligent act, viz., the starting of the car while she was still standing on the steps. Possibly the hook might not have caught her dress if she had alighted upon the street before the car started. If the starting of the car was the cause of her falling and of her being caught by the hook, it would be no defense to the action that the defendant was not responsible for the position of the hook and chain.

Upon the other questions involved we agree with the Chief Justice.

For this error the judgment must be reversed, and a new trial ordered.

LONG and MONTGOMERY, JJ,, concurred with GRANT, J. HOOKER, J., concurred in the result.

McGRATH, C. J. A husband sues for loss of his wife's services, by reason of an injury received April 1, 1891, while alighting from one of defendant's cars, and for expenses incurred by him in her treatment and care. In his declaration he avers that, solely because of the injuries received by his said wife as aforesaid, he has continually, since said accident up to the present time, been deprived, and will for all future time during the life of his said wife be deprived, of the comfort, fellowship, society, aid, and assistance of his said wife in his domestic affairs, which he, said plaintiff, during all that time ought to have had, and ought to have and otherwise might have had and should have.

The wife testified upon the trial that, after the street car had stopped, she attempted to alight, when the car started suddenly, throwing her to the ground, and that the hook of the chain used to cut off access to the car, and which hung from the dashboard, caught in her clothing, and she was dragged some distance. The fact that the hook caught in her clothing, and that she was dragged some distance, was not disputed. There was, however, testimony tending to show that the car was not started until she had alighted, and that the hook caught in her clothing after she had reached the ground. The wife was the only witness who testified to the sudden starting of the car while she was in the act of alighting. Her physicians testified that a miscarriage followed the injury, and that she was deranged at times during her illness; and one of plaintiff's witnesses who had testified that he had several times, within a few months after the accident, examined her with reference to her mental condition, and had found her deranged, on cross-examination testified as follows:

"*Q*. Did you see her on the stand this morning?
"*A*. I saw her about three minutes.
"*Q*. Did you think that she was insane this morning?
"*A*. I did, most certainly.
"*Q*. You would not believe her testimony?
"*A*. I would not."

Complaint is made of that portion of the charge to the jury wherein the court said:

"You are at liberty to consider the permanent character of this injury or its lack of permanency. I allowed this testimony to be introduced as to the mental condition of this woman for the purpose of showing you, or allowing you to judge, as to how long her husband might be deprived of her society, or of her labor as a wife, in the discharge of her domestic duties in the household, and for no other purpose. You are at liberty to investigate all the proof in this case that has been offered to you as to whether

this woman is sane or insane. I charge you that, if you shall find that now this woman is without sufficient mental capacity to understand what is going on, you are not at liberty then to consider her testimony in this case at all, for you are only at liberty to consider the testimony of a person who is *compos mentis,* or of sound mind; for a person who is without sound mind, capable of remembering or giving testimony in a case, is not to be allowed in a court of justice. One of the physicians here testified that she was insane now. If you shall come to that conclusion, then you are not at liberty to regard her testimony at all in this controversy."

This was error. We held in *Mead v. Harris,* 101 Mich. 585, that the question of the competency of a witness is one for the court, and also that, if a witness who is mentally weak can give lucid, connected testimony, the question of the weight of such evidence is for the jury, under proper instructions. The witness in the present case was examined at length, and told when she boarded the car, who accompanied her, how she notified the conductor where she wanted to get off, and gave a lucid and connected story. Indeed, she is corroborated in her story throughout, except as to the sudden starting of the car before she had reached the ground. The rule laid down in *Mead v. Harris, supra,* is sustained by a conclusive array of authority. Tayl. Ev. (8th Eng. ed.) §§ 23, 1375; 1 Rice, Ev. p. 532; *Coleman v. Com.,* 25 Grat. 865; *District of Columbia v. Armes,* 107 U. S. 519. Mr. Wharton says:

"It is now settled that in all cases either lunatic or idiot may be received, if, in the discretion of the court, he appears to have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct answer to the questions put. The question of competency is to be determined by the judge trying the case, upon the examination of the witness himself, or upon the testimony of third persons." 1 Whart. Crim. Law (5th ed.) § 752, cited in Coleman's case, *supra.* See, also, 1 Whart. & S. Med. Jur. § 242.

The subject is ably discussed, in the last case cited, by

Mr. Justice Field, who cites an English case (*Reg. v. Hill,* 5 Cox, Cr. Cas. 259), where a patient in a lunatic asylum was held a competent witness.

In *Hartford Ins. Co. v. Reynolds,* 36 Mich. 502, the inadmissibility of the testimony was predicated upon professional relationship. The fact of the relationship was disputed. The trial court excluded some matters and received others. This Court held that while, on an intricate question of fact, the jury might properly be consulted, there was room for the claim that all of the intercourse was not confidential, and that too large a range of exclusion was left for the jury. In the present case the question was not an intricate one. The rule is that the person affected with insanity is admissible as a witness if he have sufficient understanding to comprehend the obligation of an oath, and be capable of giving a lucid account of such matters as are in dispute. This question is to be determined in the main upon an examination of the witness when produced.

The court was, we think, right in limiting the recovery to the value of such services as the wife would be likely to have rendered in the discharge of her domestic duties. The declaration covered such services only.

The court erred in instructing the jury that—

"The jury must take into consideration the domestic relations of the plaintiff and his wife, and the fact that he is not able to support her, and that he does not live with her. The reason assigned that he does not live with her is that he cannot support her; and that is all the evidence on that subject that I know of. She said that, if he could support her, she would live with him; but they had not lived together for a certain time."

There was some testimony tending to show that, for a short time after the marriage of plaintiff and his wife, he was in Colorado, but there was nothing to show that this separation was because of any domestic infelicity. It seems

that after the injury the wife was taken to her mother's. On cross-examination she says:

"*Q.* After the injury you stayed and lived with your mother. How long was he away from you after the injury, —after this accident?

"*A.* I don't know, I am sure. I guess he came to see me when I was sick. I can't say.

"*Q.* Are you living together now?

"*A.* If he could support me; but he is sick, and not able to support me.

"*Q.* So you are not living in the same house?

"*A.* No, sir; he was away trying to get work. There is no work in Detroit for him, and he cannot get it to do.

"*Q.* This was in 1891. Have you lived with him at all since that time in the same house?

"*A.* He came up to my house—my mother's house—when I was sick, so they tell me.

"*Q.* But as a matter of fact you have not lived together in the same house since 1891?

"*A.* I believe not; not since they took me from him to their home. He came there. That was his home as well as mine. We boarded there."

If because of the injury the plaintiff was not able to support his wife in her then condition, the fact would not defeat recovery for loss of her services. If he was sick and unable to support her, and she had been well and assisted in his care and support, that fact certainly would not take away the right to recover. Their separation, so far as this record shows, was not the result of domestic troubles, nor was it an abandonment.

The court gave the following instruction:

"If the jury believe that the hook was in the proper place when the car left the city hall, and that it was displaced either by Mrs. Bowdle or by some other passenger, and by hanging caught Mrs. Bowdle's dress, then the plaintiff cannot recover, and your verdict must be for the defendant; that is, if this was done without any negligence on the part of the street-railway company, or any contributory negligence on the part of Mrs. Bowdle."

This instruction, and other portions of the charge,

practically took from the jury the question of the negligent starting of the car before the injured party had alighted, and the error is not cured by other portions of the charge.

The judgment should be reversed, and a new trial ordered.

