JONES *v.* STATE.

(Division A. Feb. 20, 1933.)

[146 So. 138. No. 30176.]

Hearst & Pittman and **Earle L. Wingo**, all of Hatties-
burg, for appellant.

811

A. Q. Broadus, of Purvis, for appellant.

Earle L. Wingo, of Hatiesburg, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Alexander Currie, District Attorney, of Hattiesburg, for the state.

Argued orally by **Earl Wingo**, for appellant, and **W. D. Conn, Jr.**, and Alexander Currie, for the state.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a conviction of murder. The assignment of errors complains, among other things, of (1) the overruling of the motion to quash the indictment; (2) the refusal of the appellant's request for an instruction directing the jury to return a verdict of not guilty; (3) the granting of instructions for the appellee; and (4) the overruling of a motion for a new trial based on alleged newly discovered evidence.

The motion to quash the indictment alleges, in effect, that T. J. Wills, an attorney at law, appeared before the grand jury as a private prosecutor and improperly influenced the grand jury in the finding of the indictment.

The evidence instead of supporting, negatives the charge; for it appears therefrom, without conflict, that Wills is not, and was not, connected professionally with this prosecution; but that he appeared before the grand jury at the request of the district attorney, who advised him that the grand jury wished him so to do, and that he did nothing while before them except to answer questions propounded to him.

The evidence of the death of Batten, the person alleged to have been murdered, is direct and positive; but the evidence as to his death being caused by a criminal agency, and of the identity of the appellant as the criminal agent, was wholly circumstantial. Since the conviction must be reversed and a new trial awarded, we will not set out or comment on the evidence any further than is absolutely necessary for an understanding of the questions here decided.

As to the refusal of the court below to direct a verdict for the appellant, it will be sufficient to say that on the evidence, the guilt vel non of the appellant was for the determination of the jury, and therefore his request for a directed verdict was properly refused.

The instruction defining murder complained of is unexceptionable; and the one attempting to define the phrase "reasonable doubt," as to the correctness of which we express no opinion, will probably not be given on another trial, in view of the many admonitions of this court that such should not be done.

A witness by the name of Crosby, without objection to his competency, testified to material facts, which, if true, were most prejudicial to the appellant. After the state rested its case and the appellant was introducing his evidence, it became apparent, on questions propounded to one of his witnesses, that he intended to elicit from the witness evidence bearing upon Crosby's credibility. On the sustaining of an objection to one of these questions, the appellant then, through his counsel, form-

ally made known to the court that what he intended to prove by the witness was, that by reason of the witness' association with Crosby he knew him to be mentally incapable of realizing the solemnity of an oath, and that his mentality was such as to make him an unreliable witness. The court declined to receive this evidence.

The ground on which counsel for the appellee attempt to sustain this ruling is that the excluded evidence goes only to the competency of the witness who testified, and that any objection thereto was waived by the failure to object on that ground to his being received as a witness before his testimony was delivered. It is true that this evidence would go to the competency of the witness had that question been seasonably raised, but its relevancy is not limited thereto; for it also goes to the credibility of the witness and related to a fact which, if the jury believed to exist, should have been taken into consideration by them in weighing the witness' testimony. 1 Wigmore on Evidence (1 Ed.), sections 497 and 932; 40 Cyc., p. 2573. An interesting and pertinent discussion of this evidence will be found in Bowdle v. Detroit City Railway Co., 103 Mich. 272, 61 N. W. 529, 50 Am. St. Rep. 366. The evidence should have been admitted; and had it been, and the jury believed therefrom what the appellant sought to establish thereby, the case for the prosecution would have been weakened.

The ground on which counsel for the appellee attempt to sustain the overruling of the motion for a new trial, based on newly discovered evidence, is that the evidence was merely cumulative. It will be necessary to here partially set forth the case made by the evidence on the trial and that newly discovered, so that it will appear therefrom whether or not the latter was cumulative.

On the morning of February 10, 1932, at 2:20 a. m. the engineer of a locomotive drawing a train of cars on the track of the New Orleans & Northeastern Railroad saw an object lying in the center of the track, within

the corporate limits of the city of Hattiesburg. He was unable to stop the train before it struck and ran over the object which, immediately thereafter, was discovered to be the body of Batten, the deceased, badly mangled.

The state's theory, and to which the circumstances introduced by it in evidence were pointed, is that Batten was killed by the appellant in his (the appellant's) residence, and that his body was removed therefrom and placed on the railroad track; all of which the jury must have believed beyond a reasonable doubt to the exclusion of every reasonable hypothesis consistent with appellant's innocence, before they should have convicted him of murdering the deceased. Batten was at a dance hall on the night in question, about a half mile from the railroad track. The appellant also lived about a half mile from the railroad track on the opposite side thereto from the dance hall; the distance between the two being about a mile, though the accuracy of this distance is not material. Batten left the dance hall around one o'clock, and was last seen alive at 1:20 a. m. of the day he was killed on a street several blocks from the place where his body was afterwards found. The appellant was not shown to have been then or later at or near this place. It appeared in the evidence on the trial that Batten's coat and vest were found on the steps of his residence the next morning, and, when struck by the train, his body was clothed only in his shirt, trousers, and underclothing.

On the motion for the new trial, two witnesses testified that they saw Batten on the street at 1:20 a. m., apparently intoxicated, engaged in an angry altercation with named persons, none of whom were the appellant, and that he (Batten) proposed that they not fight there, but go to his (Batten's) residence, which was also near the railroad track, where they could "get organized." This newly discovered evidence was cumulative to the extent of proving that Batten was alive at 1:20 a. m.;

but the new fact appearing therefrom that he was intoxicated and engaged in an angry altercation, and apparently about to have a fight, was only not cumulative, but would have had a material bearing on the ability of the jury to say that the inferences to be drawn from the whole evidence indicate beyond a reasonable doubt, and to the exclusion of any other reasonable hypothesis, that Batten was murdered by the appellant in his (appellant's) residence nearly a mile away from the scene of this quarrel that Batten is said to have had with others.

One of the circumstances said to indicate that the body of Batten was placed on the railroad track, after he had been killed at another place, was that very little blood appeared on the track, and practically none was found in his body by the undertaker a short time after he was struck by the train. The cross-ties of the railroad track were covered or ballasted with slag, through which blood could percolate. A witness, offered on the motion for a new trial, testified that he arrived there between 8 and 9 a. m. of the morning on which Batten was struck by the train; that there was considerable blood on this slag; and that it was covered with dirt and cinders and thereby concealed, by himself and other parties acting, it seems, under the direction of railroad employees, but without any sinister purpose. This evidence would have contradicted the state's evidence that no blood appeared on the track. Whether that fact is of sufficient importance to justify a reversal of the judgment we need not say, as the judgment must be reversed on the grounds heretofore discussed.

Reversed and remanded.