THE MAYOR, ETC. OF GAINESVILLE *vs.* CALDWELL.

1. Though the charter incorporates the city under the name and style of the City of Gainesville, yet as it also declares that the municipal government is vested in a mayor and aldermen " who shall be styled the Mayor and Council of the City of Gainesville; and by that name are hereby made a body corporate; as such they shall have perpetual succession, shall have a common seal, may contract and be contracted with, may purchase or otherwise receive, hold, possess, sell and convey for the use of said city, real or personal estate of any kind, and may sue or be sued," a suit against "the Mayor and Council of the City of Gainesville," for negligently suffering an awning which extended over one of the sidewalks to be unsafe, by reason of which it fell upon the plaintiff and injured him, is well-brought so far as the corporate name is concerned.

2, 3. The verdict was not contrary to law, nor to evidence, nor excessive in amount.

4. A witness having been examined on interrogatories by commission duly issued, he was, *prima facie*, mentally competent to testify, and evidence subsequently taken tending to show that he was insane when examined, was for consideration by the jury under proper instructions from the court, and not for final adjudication by the judge presiding, there being also testimony in favor of sanity.

5. In charging the rule of ordinary diligence, the court may contrast it with extraordinary diligence to make the former more clear and better understood.

6. Irrelevant testimony which is immaterial or having but slight materiality, and which is not likely to have misled the jury, is not cause for a new trial.

May 7, 1888.

Municipal corporations. Actions. Verdict. Witness. Insanity. Charge of court. Diligence. Evidence. New trial. Before Judge WELLBORN. Hall superior court. August term, 1887.

Reported in the decision.

W. F. FINDLEY, H. H. PERRY, GEORGE K. LOOPER and F. M. JOHNSON, for plaintiff in error.

J. B. ESTES, CLAUD ESTES and M. L. SMITH, *contra*.

BLECKLEY, Chief Justice.

This was an action for damages sustained in conse-
quence of the falling of an awning which extended over
a sidewalk in the city of Gainesville. The action was
against the Mayor and Council of the City of Gaines-
ville, and the declaration was demurred to because no
action would lie against the corporation in that name.
It is contended that the action should have been against
the City of Gainesville; and the question turns upon
the act embracing the charter of the city of Gainesville
as now existing, approved February 28th, 1877, (acts
1877, p. 163.) The second section of that act is in
these words: " That said city is hereby incorporated
under the name and style of the City of Gainesville.
The corporate limits thereof shall extend one mile in
every direction, from the center of the court-house, as it
is now situated." The third section of the act is in these
words: "That the municipal government of said city
shall be vested in a mayor and two aldermen from each
ward of the city, as said wards now exist or may here-
after exist, who shall be styled the Mayor and Council
of the City of Gainesville; and by that name are hereby
made a body corporate. As such they shall have per-
petual succession; shall have a common seal; may con-
tract and be contracted with; may purchase or other-
wise receive, hold, possess, sell and convey, for the use
of said city, real or personal estate of any kind; and
may sue or be sued."

1. The action was against the corporation by the
name prescribed by the third section of the act; and
as that is the only part of the act which prescribes
how the corporation shall sue or be sued, we think
the action was well-brought against the Mayor and
Council of the City of Gainesville. The sugges-
tion in argument was, that this was the corporate

name of the governing power of the city, and not of the city. But it will be seen that the injury complained of was by the governing power of the city, and not by the city. It was not the duty of the city to keep the awnings over the sidewalks safe, and prevent them from injuring passers by; but it was the duty of the power that had control of the government of the city; and the custodians of this power are sued in this action. So we think the suit was well-brought.

2. The plaintiff recovered in what, I believe, was the third verdict, and the defendant made a motion for a new trial, because the verdict was contrary to law. We think it was not. "Because the verdict was contrary to law, in that the suit and verdict are against 'the Mayor and Council of the City of Gainesville.'" This has been considered. "Because the verdict is contrary to evidence." We think that under the evidence, the verdict might have been either way. If we had been deciding it ourselves, we might have found differently from what the jury found; but their verdict is better than ours.

3. Because the verdict is unsupported by any evidence as to the amount of damages recovered, and the amount recovered is excessive. We do not find that it is excessive, by anything apparent in the record. It was between $800 and $900, and the injury was a very grave one. If the city was liable at all, the amount of the verdict was warranted by the evidence.

4. Because the court erred in not reading or hearing read the interrogatories of certain persons named, and the exemplification of the record of the South Carolina lunatic asylum, which were offered to show that Turner, one of the witnesses for the plaintiff below, was insane at the time his interrogatories were executed; but left the question of the competency of Turner for the jury to pass upon, and allowed the interrogatories and exem-

plification to be read to them. The position of the movant on this ground of the motion for a new trial is, that the court should have heard the testimony and passed upon the competency of the witness. It seems that Turner, after being examined as a witness in behalf of the plaintiff below, was found to be a lunatic or insane, and was committed to the lunatic asylum of South Carolina, the State of his residence. Upon the offer to read his testimony as taken by interrogatories, evidence taken from other witnesses by interrogatories, *pro* and *con,* was before the court, and it was insisted that the court should look into this testimony and decide whether the witness was sane or insane at the time he was examined by the commissioners to take his interrogatories. The court declined to determine the question affirmatively or negatively as to whether he was sane or not, but submitted all the evidence to the jury with proper instructions, we may assume, with reference to considering or not considering the evidence according as they found that he was sane or insane at the time of his examination. We think this was right. He having been examined under a commission issuing from the court, the presumption is that the commissioners would not have examined him unless he had been sane at the time of the examination. We have a case (*Formby vs. Wood,* 19 *Ga.* 581,) in which a person, who by his guardian had sued as a lunatic, entered an appeal; the case having been decided against the guardian, the lunatic himself came in and entered an appeal, and in doing so he filed a pauper affidavit. The question came up afterwards on a motion to dismiss the appeal on the ground that the affidavit had been made by the lunatic and the appeal entered by him instead of by the guardian. This court held that *prima facie* the lunatic was competent to take the oath and to enter the appeal, and the motion to dis-

miss it was denied.   Here we have the case of commis-
sioners acting under the authority of the  court, having
examined this person as a witness.   The testimony was
returned as duly taken, and the question came up as to
whether the witness was competent to be sworn as a
witness.   *Prima facie* he was competent, because he had
been sworn by persons properly appointed by authority
of the· court to administer the oath.  He had been sworn
and examined, and therefore his  evidence was properly
submitted to the jury, and together with  it all  the evi-
dence on both sides touching upon the question  of  the
witness's sanity or  insanity.   This testimony  included
the evidence of one of the commissioners, who  testified
that the witness was sane, and was careful and rational
in making his answers to the interrogatories.  We think
that if it was the duty of the  court  to determine  *prima
facie* upon the competency of the  witness  in  regard to
his sanity or insanity, the mere fact  that  he  had  been
examined as a witness by commissioners under the com-
mission, was enough to justify the court in allowing the
evidence to be read and  to  submit  that,  together with
all the testimony touching the sanity or insanity of the
witness,·to the jury for them to deal with.

  5.  Another ground of the motion  for a  new trial is,
that the court erred in charging that " ordinary care and
diligence is that care and diligence which a sensible, pru-
dent man gives to his own business; extraordinary care
and diligence is that sort of care which a  very  prudent
man gives to his own business as enjoined by obliga-
tion."   The point of objection here is, that the  court
ought not to have said anything about extraordinary
care and diligence; because this was not a case that in-
volved that degree of care and diligence.   But it is evi-
dent that the court, if it it did say what is imputed,
(and it is somewhat doubtful, under .the  authentication

of the grounds of the motion for a new trial, whether the court said it,)·went into extraordinary care merely by way of contrasting ordinary with extraordinary care, and to enable the jury to fully understand what was meant by ordinary care. So we think there was no error.

6. Because the court allowed plaintiff's counsel to ask witnesses as to the condition of other awnings in the city. These grounds of the motion were approved with certain explanations. It seems that the defendant brought before the court and jury the matter of other awnings, by an examination of some witness in the course of the trial; and the plaintiff was simply allowed to follow up that line of investigation after the defendant had entered upon it. It is very likely that this evidence was irrelevant; and the ground of objection was irrelevancy; but it was simply the following up by the plaintiff of irrelevant evidence brought in by the defendant; but at all events, whether the evidence was admissible or inadmissible upon any ground, it was not sufficiently material to warrant us in overruling the judgment of the court denying the motion for a new trial. There is not the least probability that it misled the jury.

Judgment affirmed.