## ALEXANDER *v.* THE STATE.

1. The requests to charge, in so far as they were pertinent and proper, were fully covered in the general charge, which correctly submitted the issues to the jury.
2. The charge as to the right of a son to defend his father was as favorable to the defendant as he could legally ask, and was given without any suggestion as to whether it might not have been lost if the son knew that the father himself would have had no right, at the time, to kill the deceased.
3. While in determining whether there was cause for reasonable fear, or whether the homicide was justifiable, the jury might consider the difference in size and physical condition of the parties, it would have been erroneous for the judge to instruct them that they should consider such disparity.
4. For the witness to state what was his intention was not opinion evidence, but proof of a substantive fact, and admissible in this case. The error in excluding such testimony was subsequently cured by allowing the witness to testify to his intention.
5. There was no assignment of error whatever on the charge as given; and this being a second verdict of guilty, and there being no error requiring the grant of a new trial, the judgment is affirmed.

Argued April 27,—Decided May 30, 1903.

Conviction of manslaughter. Before Judge Sheffield. Early superior court. February 2, 1903.

*W. M. Hammond* and *A. G. Powell*, for plaintiff in error.

*J. A. Laing*, solicitor-general, contra.

LAMAR, J. The defendant was granted a new trial (*Alexander v. State*, 114 *Ga.* 266), and again found guilty of voluntary manslaughter. It appeared that he fired several shots, one and probably the last of which killed Cherry. He insisted that he did so to protect his father against a felonious assault by Cherry; that thereupon the latter advanced upon the defendant in a threatening attitude, with an instrument likely to produce death in his hand, and that in shooting he acted under the fears of a reasonable man, and in self-defense. The judge fully and fairly submitted the issues raised by the evidence, instructing them that the defendant was not guilty if he shot to defend his father against what he believed to be a felonious assault by the deceased, nor would he be guilty if he fired to protect himself; but that if the shot was fired, not for the protection of himself or his father, but because of a sudden heat of passion aroused by the attack made upon his parent, he would be guilty of voluntary manslaughter. Several of the assignments of error were on the court's refusal of requests to charge based on the theory that even if the father used opprobrious words

towards the deceased, that did not warrant Cherry in making a felonious assault, nor would it take away the son's right to defend him from such an assault so caused. The charge on this subject was quite as favorable as the defendant had the right to expect. The jury were told that the son could defend his father from a felonious assault, or what he thought was such. This right was not qualified. It was not made to depend on whether the father was blameless or at fault then or in starting the altercation, nor whether the father would have been justified in killing Cherry at the time the son fired. Penal Code, § 74.

While the right of husband and wife, and parent and child, to defend one another is fully recognized, some cases hold that one can not defend another where the latter himself would not be authorized so to do; others rule that if one brings on a difficulty, or is in a position where it would be murder for him to kill his assailant, the relative would be guilty of a similar offense if under these circumstances he should interpose and kill the blameless opponent. Saens v. State (Tex.), 20 S. W. 737; State v. Brittain, 89 N. C. 482 (5); State v. Melton, 102 Mo. 684 (3); State v. Herdina, 25 Minn. 161. In the present case no restrictions or limitations were suggested. The judge gave the defendant the benefit of the fullest and most unqualified right to protect his father, regardless of whether the latter would then have been justified in killing Cherry, and the requests to charge on the subject of the defense of a father by a son were fully covered in the general charge. Penal Code, § 74.

Error is assigned because the court refused to charge that "in determining whether [the defendant] was acting under the fears of a reasonable man, and in determining whether it was necessary for him to defend his father from an assault by Mr. Cherry, if any be proven, you should take into consideration any disparity proven to have existed between the physical conditions of Mr. Cherry and Mr. J. W. Alexander, also between the physical conditions of Mr. Cherry and Mr. Robert Alexander," etc. Under the limitations placed by Civil Code, § 4334, on the powers of a judge, it is generally of doubtful propriety for him to enumerate a given state of facts and tell the jury what the effect thereof is, or what use they may make of the facts. But it is forbidden for the judge to enumerate a state of facts, and then tell the jury what use they must make

of them.    If the judge had been requested to charge that the jury *might* consider the disparity in size and strength between the parties it might have been proper.    The fatal error here was that the judge was asked to instruct the jury that they *should* consider the difference in size.    The request says nothing about the effect of a pistol in the hands of a small man equalizing any disparity in size, nor what should be the effect if both the Alexanders were armed or only one had a weapon.    The finding of the jury that the defendant was guilty of voluntary manslaughter is equivalent to saying that the homicide was not in self-defense, not in defense of his father, but resulted from the heat of passion engendered by the previous assault on the parent.    That finding eliminates any legal justification which might otherwise have resulted from a disparity in size.    In a proper case the court should instruct the jury that they might consider the difference in strength of the two parties.    *Strickland* v. *State*, 94 *Ga.* 84.    But the charge here requested was not accurate; and even if it had been otherwise correct, the failure to give it was harmless.    If the defendant had been found guilty of murder, it might have raised a different issue in a motion for new trial, even if there had been no request to charge on that subject.

The theory of the State was that the two Alexanders had armed themselves and gone to the plantation of the deceased with a view of precipitating a difficulty.    The father had been separately indicted for the same homicide, and when he was put on the stand as a witness on behalf of the son, the court refused to allow him to testify that he " did not intend to have any difficulty."    We do not think that this was a mere conclusion of the witness.    A man may frequently testify as to his motives, intention, and state of mind.    When otherwise relevant, the state of mind can be proved as an independent fact.    *Royce* v. *Gazan*, 76 *Ga.* 80 (5) ; *Baxley* v. *Baxley*, 117 *Ga.* 60.    What the person himself testifies is not necessarily conclusive, because the jury is authorized to apply the homely maxim that " actions speak louder than words," and from one's acts they may determine that the intention was directly opposite from what he says it was.    Motive is to be determined as much by what one does as by what he says.    Penal Code, § 32. But while the jury is not bound to accept the statement of a witness as to what was his mental state, it was here relevant and important, and would necessitate the grant of a new trial but for the

fact that the witness later in his testimony made this proof. In the brief of evidence we find that he testified: "I went there for the purpose of getting my hands back. ... Cherry and Robert never had a cross word in their lives. Robert and myself did not have any conversation in regard to or looking with reference to any anticipated difficulty with Cherry that day. . . Robert led me up there, and I didn't go there with any intention of raising a difficulty with Mr. Cherry." This, we think, cured the error. *Vaughn* v. *State*, 88 *Ga.* 732 (5).

The impeaching witness had been allowed to go as far as was justified by the foundation previously laid, and proved the contradictory statement. On cross-examination he testified to another statement by the witness who was under attack. The defense desired to make further examination and show that both had been made. This, we think, already appeared; and while it might have been proper to allow the additional inquiry, the failure to do so was not reversible error, particularly as the question, if not actually leading, was calculated to inform the witness of the answer expected.

There is no assignment of error whatever on the charge as given. It was concise and clear. All proper requests were included therein; and this being the second verdict, the judgment is

　　　　　　　　　　*Affirmed. By five Justices.*