ANDERSON <em>v.</em> THE STATE.

1. The indictment charged the crime of infanticide as having been committed in a particular way "and by ways and means to such grand jurors unknown." An instruction that if the jury were satisfied beyond a reasonable doubt that the defendant "killed such child by any one or more of the ways set forth in the indictment, or killed it in any other manner," they would be authorized to convict, was not likely to mislead the jury as authorizing a conviction in case the death of the infant was due to accident, where there was no evidence or contention at the trial that the death was the result of misadventure.
2. The definition of malice as an ingredient of the crime of murder was not open to the criticism made against it.
3. The evidence did not authorize a charge on involuntary manslaughter.
4 Other assignments of error are without merit, and the evidence supports the verdict.

NOVEMBER 17, 1916.

Indictment for murder. Before Judge Worrill. Terrell superior court. August 15, 1916.

*R. R. Jones,* for plaintiff in error.

*Clifford Walker, attorney-general, B. T. Castellow, solicitor-general, R. R. Arnold,* and *Mark Bolding,* contra.

EVANS, P. J. The defendant was convicted of the murder of her newly-born babe, and recommended to mercy. The court refused to grant a new trial, and she excepted.

1. The indictment charged that the defendant did kill and murder her female child, "by then and there wrapping cloth and clothes about the head and face of such child in a manner to prevent its respiration, and by placing such child in a trunk and closing said trunk, thereby suffocating, strangling, bruising, and crushing said child, and by ways and means to said grand jurors unknown." The court instructed the jury that if the evidence satisfied them beyond a reasonable doubt that the child was born alive, and that the defendant "killed such child by any one or more of the ways set forth in this bill of indictment, or killed it in any other manner," they would be authorized to convict. It is insisted that under this instruction the jury could have convicted the defendant although the death of the child may have been the result of accident. There was nothing in the evidence to suggest a theory of accident. The prisoner made no statement. The court, just previously to this instruction, had defined the crime of murder and its constituent elements, and had charged the jury that malice was the willful and deliberate purpose of unlawfully taking life. Under these circumstances we do not think the jury likely to have been misled into construing the charges as having reference to a death by misadventure, but rather that the court's language had reference to the unlawful and deliberate killing of the child either in the way described in the indictment or in some other manner not known to the grand jury.

2. After defining malice in the language of the Penal Code and further elaborating the legal meaning of the term, the court continued: "Nor does malice necessarily mean ill will, hatred, or personal animosity toward any particular individual. But malice in the abstract, that is to say legal malice, means nothing more than the willful and deliberate purpose to unlawfully take human life. That is its meaning as it is used in the definition of murder, regardless of the motive from which it may spring up, whether from hatred, personal animosity, avarice, love, jealousy, or any other emotion which prompts and sways the human heart." The criticism is that it was probable that the jury misconstrued its application, in that it indicated that the matters necessary for the crime of murder might be inherent in any and every emotion of a human being. The court was differentiating the popular idea of malice, in the sense of revenge or hatred, from malice in its legal sense, which is but an intent to take human life where the law neither

justifies nor in any degree excuses that intention, if the killing should take place as intended. The language of the court was substantially in accord with the rule as laid down in *Taylor* v. *State,* 105 *Ga.* 746 (31 S. E. 764), and it is not open to the criticism made of it.

3. The plaintiff in error complains of the failure of the court to charge on the subject of involuntary manslaughter. The evidence did not authorize such charge. The defendant was a colored school-teacher, unmarried, and boarded with a family consisting of the head of the family and his wife and a niece about thirteen years of age. The latter testified that the defendant came home from school one afternoon, immediately went to her room, locked the door, and complained of being sick. The witness, through an opening in the room, saw the defendant get on the floor in a kneeling position, heard a groan and saw her give birth to a baby. She heard the baby cry, and saw the defendant wrap the baby in some of her underclothes, place it in a trunk, and lock the trunk. Afterwards the defendant called for the witness and asked her to bring some warm water. The next morning the defendant was seen to open the trunk, take from it a bundle, and to leave the house with it, to a place near by, where the bundle, containing the dead body of the child, was found buried. Various corroborative circumstances were shown. Under this evidence involuntary manslaughter was not involved.

4. Other assignments of error are without merit. The evidence authorized the verdict, and no sufficient cause appears for the granting of a new trial.

*Judgment affirmed. All the Justices concur.*