## DAVIS *v.* THE STATE.

1. An indictment charging murder is not demurrable because it does not allege " that the killing of the deceased by the defendant was unlawful." Nor are the other grounds of demurrer to the present indictment meritorious.
2. A juror who is not related to the prosecutor in a criminal case, by consanguinity or affinity within the ninth degree ascertained according to the rules of the civil law, is not disqualified on this ground.
3-21. The exceptions to instructions to the jury, to refusals of requested instructions, and to rulings admitting evidence, present no cause for a new trial; and the verdict was authorized by the evidence.

No. 2919. June 17, 1922.

Indictment for murder. Before Judge Graham. Treutlen superior court. October 24, 1921.

Davis and three others were jointly indicted. The indictment contains five counts, in each of which it is charged that defendants " did kill and murder one William H. Hall, . . contrary to the laws of said State, the good order, peace, and dignity thereof." The first count charges that the defendants administered to the deceased chloral hydrate poison in whisky, which produced death; the second count is substantially the same as the first, except that the amount of chloral hydrate poison administered is

stated as "one hundred grains or other large quantity;" the third count charges that defendants placed "cloths, bandages, and other objects unknown to the grand jurors, over the nose and mouth of the said William H. Hall," causing death from suffocation; the fourth count charges that defendants caused the deceased to die from suffocation, by placing him in a body of water "and pressing him down and placing his nose, mouth, and respiratory organs in such close contact with the mud and dirt and other objects at the bottom of said body of water, so as to suffocate the said William H. Hall." The fifth count charges that defendants caused the death of deceased from drowning by forcibly placing and keeping him in a body of water. The indictment was demurred to, because (1) no offense is set out in either count; (2) it is not alleged in any count of the indictment that the killing was unlawful; (3) the fourth and fifth counts of the indictment do not name, designate, and specify the body of water in which the deceased was placed. The demurrer was overruled, and error is assigned on exception pendente lite filed.

The evidence offered by the State shows that Hall, the deceased, had practically no property; that his means of livelihood was the performance of labor upon farms; that he had worked for Davis, the accused; that on October 29, 1919, Davis, who claimed that Hall owed him some two thousand dollars, endeavored to procure insurance of $10,000 on the life of Hall, which was refused, and he then made application for a policy of insurance on Hall's life, in the sum of $5000, which Hall was induced to sign; that the company to which this application was made declined to write the policy; that in June, 1920, Hall applied to another company for a policy of $5000, which was issued, Davis taking an active part in procuring this policy, representing himself to be a creditor of Hall, and paying the premium thereon; that this policy was shortly thereafter assigned to Davis; that a day or two before the death of the deceased, which occurred on September 13, 1920, Davis had proposed to Smith, jointly indicted with Davis, Coleman, and Durden, that Smith should drive the cart and horse belonging to Davis to another county, where Hall was, and that on the return trip he should permit the horse to run away and kill Hall; that Smith did carry Hall to the home of Davis, and while there

Davis asked Smith if he wished to make some money easily, and, upon receiving an affirmative answer, proposed that Smith should discharge a gun which he was to carry, in such a manner as to kill Hall, saying that he. [Davis] would swear it was an accident, that he had $15,000 insurance on Hall's life, and that in the event of accidental death he would get $30,000; that Smith rejected this proposal; that on the same day Davis, Durden, Coleman, Smith, and Hall went in an automobile belonging to Durden to Norristown; that while there Hall had to answer a call of nature; that Davis was seen to go in the direction of a drug-store; that on the return trip that night it was necessary to make several stops to adjust the mechanism of the automobile, because it was not working properly; that Davis offered to Smith and Hall a bottle of whiskey, that they both took a drink and Hall remarked that it tasted pretty bad, as if it had been burned; that shortly thereafter the automobile was again stopped very near to the bridge across Ohoopee River to make some further adjustments; that Davis again offered Smith and Hall whisky; that the latter took another drink, and almost immediately had to answer a call of nature; that Smith and Hall got on the rear seat of the automobile; that when the adjustment had been made the engine failed to work; that Durden proposed that the automobile be pushed for a short distance in order to get the engine started; that Davis, Durden, and Coleman pushed the automobile, and just as it started upon the bridge the engine began running, when Durden reached into the car and did something, and just at that instant the car plunged from the bridge into the stream, turning over and catching Hall and Smith beneath it; that Smith succeeded in getting out with slight injury; that it was an hour or more before Hall's body was recovered; that it was carried to the home of Davis; that on the following day an autopsy was performed and the stomach removed; that a portion of the contents were spilled; that it was wrapped in paper and permitted to lay upon the front porch for some little time; that one of the doctors then placed it in his automobile, where it remained during his return to Soperton, including a stop for some little time during a visit at the home of his parents, and for a while after reaching Soperton; that it was then taken from the automobile and carried into the drug-store, where it was placed in an ordinary fruit-jar and later brought by

another of the doctors participating in the autopsy to a chemist at Atlanta.   This chemist testified that analysis showed that the stomach contained 14-2/5 grains chloral hydrate.   There was also expert testimony to the effect that chloral hydrate is a deadly poison when taken in sufficient quantity; that it has the effect of producing a state of coma; that it is easily dissolved in water or 'whisky, and would hardly be noticed, especially in the latter; that forty to fifty grains is regarded as a dangerous dose; that absorption of the poison into the system begins almost immediately upon its being swallowed; and that the finding of 14-1/2 grains in the stomach of a dead person would indicate that a larger quantity had been taken and a portion of it absorbed into the system prior to the death.

*J. K. Hines, F. H. Saffold, A. S. Bradley, G. B. Davis, W. J. Wallace, D. R. Jackson,* and *N. L. Gillis Jr.,* for plaintiff in error.

*George M. Napier, attorney-general, M. H. Boyer, solicitor-general, Seward M. Smith, assistant attorney-general, R. R. Arnold,* and *Saffold & Stallings,* contra.

GILBERT, J.  1.  The demurrer to the indictment contains five grounds, as shown by the statement of facts.   None of the grounds of this demurrer are meritorious, and the court properly so held.   One ground of the demurrer complains that it is not alleged in the indictment " that the killing of the deceased by the defendant was unlawful."   The word " murder," as used in this connection in the indictment, has a clear legal meaning.   It is not a mere conclusion.   The statute law, as found in the Penal Code (1910), § 60, declares:  " Murder is the unlawful killing of a human being in the peace of the State, by a person of sound memory and discretion, with malice aforethought either express or implied."   In each count the means and methods employed in the killing are alleged, and in each count the charge concludes with the allegation that the defendant did the things charged against him, " contrary to the laws of said State."   Compare *Coxwell* v. *State,* 66 *Ga.* 309; *O'Neil* v. *State,* 116 *Ga.* 839, 840 (43 S. E. 248); *Badger* v. *State,* 5 *Ga. App.* 477 (63 S. E. 532).   The other grounds of demurrer do not require discussion.

2.  A juror in a criminal case who is not related either by consanguinity or affinity within the ninth degree to the prosecutor, ascertained according to the rules of the civil law, is a qualified

juror. *Crawley* v. *State*, 151 *Ga.* 818 (3), 821 (108 S. E. 238, 18 A. L. R. 368). The supplemental brief of the plaintiff in error contains this statement: " If the relation of the juror to the prosecutor is to be determined by the civil law, then the juror is not related within the prohibited degree." Under this stipulation this ground of the motion for a new trial is without merit.

3. One ground of the amended motion complains that the court erred in charging the jury as follows: " If, after you have examined all of the evidence in this case and the statement of the defendant, your minds are unsatisfied, unsettled, wavering, and you cannot, as honest men, viewing this transaction as you do any ordinary transaction, come to a conclusion beyond a reasonable doubt that the defendant is guilty, you ought to acquit him." Considered with the context of the charge, the use of the words " ordinary transaction " does not amount to error. Immediately preceding the excerpt quoted the court charged as follows: " Juries, in their judgment in criminal cases, occupy the same position as other searchers after the truth, with but one exception: the presumption is in favor of innocence, and the guilt of the defendant must be proven beyond a reasonable doubt; but the rules of belief and the grounds of confidence are the same as in other cases, and the principles of common sense are just as controlling as in other cases." The effect of the charge on this subject, as a whole, was simply to impress upon the jury that in order to convict the defendant they must, as honest men searching for the truth, be convinced of his guilt beyond a reasonable doubt.

4. The sixth ground of the motion complains that the court erred in charging the jury as follows: " The law presumes every intentional homicide to be malicious until the contrary appears from circumstances of alleviation, excuse, or justification, and it is encumbent on the prisoner to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him." The error assigned is that the charge is inapplicable and irrelevant to any of the issues involved in the case; because the defendant did not set up any defense of alleviation, excuse, or justification for the homicide; because the charge tended to mislead and confuse the jury; because it presupposes, intimates, and amounts to an expression of an opinion on the part of the

court that the defendant killed the deceased. The charge did not amount to an expression of an opinion, nor was it error for any of the other reasons assigned.

5. The seventeenth ground of the amended motion complains that the court erred in permitting a physician sworn as a witness for the State to testify as follows: "His mouth [referring to deceased person] could be opened, and you could pour water in there and fill the trachea." This evidence was testimony of an expert, and related to facts coming within his own knowledge; and the evidence was material and admissible, and it was not necessary that the question propounded should be hypothetical in its character to render it so.

6. In the eighteenth ground of the motion movant complains that a physician was permitted to testify as follows: "I have never had a death from chloral, but authorities say ten grains will produce death. In fact it has a string of cautions with the authorities, more than most any other drug." The objection was that the evidence "was a bare repetition of the witness of statements contained in the authorities, and was not based upon either his experience or information found on research, and having the effect of injecting into the case the bare unsworn statement of some unknown writer." The trial judge, in a note to this ground of the motion, sets out in detail what occurred in regard to the admission of this evidence; and it appears that the court did not rule on this objection at the time, stating that counsel could take it up later before the case was concluded, and that no further motion was made in reference to the testimony. Under repeated rulings of this court it became the duty of counsel to renew his request and obtain a ruling before the case was concluded. Having failed to do so, no issue is made.

7. In the nineteenth ground movant complains that the court erred in permitting a physician to testify as follows: "Q. What is your opinion as to whether or not the man [referring to the deceased, William H. Hall] was drowned? A. I don't think he was." The objection was that "one of the questions at issue in the case was the deceased, William H. Hall, had been drowned, and that a witness, even though an expert, could not decide the very issue that the jury was called upon to pass." It was competent for a medical expert, especially one who had performed an

autopsy on the deceased, as in this instance, to give his opinion as to whether or not the deceased was drowned.

8. In the twentieth ground movant complains that the court permitted a physician to testify as follows: " Supposing an examination of the lungs showed no water on the lungs, and examination of the heart showed no unusual congestion of venus blood in the heart, an examination of the outer parts of the body showed only a little indentation on the left leg just above the ankle that did not even break the bone, also a little abrasion on the ninth rib that did not bring the blood, and suppose no other wounds or any other conditions appeared to produce death, and that more than fourteen and a fraction grains of chloral were found in that portion of the stomach which remained after you gentlemen lost some of it, I want to ask you, under those facts and under that hypothesis that I have [sic] out to you, what in your opinion would be the cause of death?" The criticism is that the question assumes the issue to be tried by the jury; and also that the facts upon which the hypothetical question was based were not full and complete." In propounding a hypothetical question such as the above, all of the facts may be grouped together; but it is not essential to the admissibility of evidence that there should be a complete resumé of every fact entering into and involved in the case. The omission to state any necessary fact may be shown on cross-examination as a reason for discrediting the answer or affecting its probative value, and a more complete grouping of the facts involved might have been framed in propounding another hypothetical question embracing such additional facts. It is not always possible to group all of the facts in framing a single hypothetical question. No error is shown in this ground of the motion.

9. In the twenty-first ground of the motion complaint is made that the court erred in permitting a witness for the State, an expert chemist, to testify as to the result found by him in making a chemical analysis of the stomach of the deceased. The objection is to the testimony of the witness as a whole, and is based on the contention that the stomach was so handled that it did not appear that it had been free from contamination or from having substances put into it, or an opportunity that it be done. This ground of the motion shows, from the evidence of other witnesses who

handled the contents of the stomach from the time it was taken from the body of the deceased to the time of its delivery to the chemist, that the evidence was not inadmissible for the reason assigned.

10. The twenty-second ground of the motion assigns error on the admission in evidence of an insurance policy on the life of Wiley S. Smith, jointly indicted with the accused, and an assignment of the policy by the insured to E. E. Coleman, also jointly indicted with the accused; also a receipt signed by Coleman, surrendering and terminating the policy and all rights and benefits thereunder on a refund of the premiums. The evidence in the case showed that Smith and Coleman were present at the time of the alleged homicide, and the attendant facts and circumstances authorized the jury to find that both of them were implicated in the conspiracy to kill the deceased. Under these circumstances it was not error to admit the insurance policy in evidence.

11. The thirtieth ground complains that the court erred in charging the jury as follows: " A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident." The evidence showed that the deceased came to his death while out on an automobile trip with the accused and those jointly indicted with him; that the automobile was stopped just before crossing a bridge over a stream of water; that, at the instance of the accused, the deceased had drunk intoxicating liquor, and there was evidence tending to show that the liquor had been poisoned; that while the accused was on the ground and the deceased sitting in the automobile under the influence of the poisoned liquor, the car was pushed or shoved on the bridge; that it rolled off and plunged into the stream, carrying the deceased down and falling upon him; that after about an hour the body of the deceased was recovered from beneath the water and underneath the automobile. In view of these facts shown by the evidence this charge was beneficial to the accused, and consequently is not cause for the grant of a new trial.

12. The thirty-first ground of the motion complains that the court erred in permitting the widow of the deceased, sworn as a witness for the State, to testify that she " did not have a dress to go to the funeral with." The only objection to this evidence was that it was " irrelevant." The theory of the case insisted upon

by the prosecution was that the deceased was a poor and ignorant man, possessing practically no property, supporting a wife and three children as an ordinary farm laborer; that the accused, claiming to be a creditor to the extent of two or three thousand dollars, had attempted to procure an insurance policy on the life of the deceased, payable to the accused as beneficiary, in the sum of ten thousand dollars; that this application was refused by the company to which application was made, but that the accused succeeded in procuring from another company a policy of five thousand dollars on the life of the deceased, with the accused as beneficiary. The widow, among other things, testified that her husband did not have any land or stock, cattle or hogs; that their household goods were worth not over fifty dollars; that "we did not have many clothes; . . when my husband died I did not have a dress to go to the funeral with." While this evidence may have been of slight materiality, it was not entirely irrelevant as to the question of the financial condition of the deceased. "If evidence is admissible for any purpose, its admission will not cause a new trial." *Purvis* v. *Atlanta Nor. Ry. Co.*, 145 *Ga.* 517, 519 (89 S. E. 571). Besides, "Ordinarily a new trial will not be granted because irrelevant testimony has been admitted." *Marshall* v. *Morris*, 16 *Ga.* 368 (4), 373; *Mayor* v. *Caldwell*, 81 *Ga.* 76, 81 (7 S. E. 99); *Travelers Ins. Co.* v. *Thornton*, 119 *Ga.* 455 (8) (46 S. E. 678); *Crozier* v. *Goldman*, 153 *Ga.* 162 (111 S. E 666); and see *Andrews* v. *State*, 118 *Ga.* 1 (43 S. E. 852).

13. On the trial of the case counsel for the accused duly presented to the court a request in writing for instructions to the jury. The request contained paragraphs numbered consecutively one to thirty-three, inclusive. Many of these paragraphs contained repetitions, some requesting over and over again instructions on the principle of reasonable doubt as applicable to separate issues of fact. A great many of the principles requested were covered in the general charge to the jury, either in hæc verba or in substance. It is a familiar rule that the judgment of the trial court will not be reversed for refusing a written request to charge, where the principle has been literally or in substance covered; and it has also been frequently ruled that the trial court need not, even though duly requested in writing, repeat, as applicable to separate issues, the doctrine of reasonable doubt. The

series of requests, if they can be treated as separate requests and not a single request en bloc, imposed a needless burden upon the trial court of separating and eliminating the repetitions mentioned.

14. Movant complains that the court erred in refusing the following .written request to charge, duly presented: " It is unlawful for any person, firm, or corporation to sell, furnish, or give away any chloral hydrate, except upon the original written orders or prescription of a lawful authorized practitioner of medicine, dentistry, or veterinary medicine, which order or prescription shall be dated and shall contain the name of the person for whom prescribed, or, if ordered by a practitioner of veterinary medicine, shall state the kind of animal for which ordered, and shall be signed by the person giving the prescription or order. Such written order or prescription shall be permanently retained on file by the person, firm, or corporation who shall compound or dispense chloral hydrate ordered or prescribed, and it shall not be again compounded or dispensed except upon the written order of the prescriber for each and every subsequent compounding or dispensing. No copy or duplicate of any written order or prescription shall be made or delivered to any person, but the original shall at all times be open to inspection by the prescriber and properly authorized officers of the law. The above provisions do not apply to preparations containing not more than twenty grains of chloral hydrate in one fluid ounce, or, if a solid preparation, in one avoirdupois ounce. A violation of these provisions of law is made a crime under the laws of Georgia, and the offender on conviction will be punished." The facility with which the poison chloral hydrate might be obtained, or the difficulty attending the procuring of the drug, was possibly not immaterial or irrelevant to the issues involved in this case; but the judge was not bound, even though requested, to charge a lengthy criminal statute prescribing how the drug may be procured, and the minute and tedious proceedings which must be observed before it is lawful to sell the same, and all regulations as to the disposition of the prescription after it is filled.

15. Error is assigned on the refusal by the court of a written request, duly presented, to give in charge the following: " A creditor has, for the purpose of indemnifying himself against loss, but for no other purpose, an insurable interest of his debtor.

This interest cannot exceed in amount that of the indebtedness to be secured." The refusal to charge as requested was not error. In the first place, the language of the request is not itself entirely accurate; but if we treat the request as reading " the creditor has an insurable interest in the life of his debtor," the judge was not bound to give this abstract principle in charge to the jury. It might have left upon the minds of the jury the impression that they were to assume that the accused was a bona fide creditor of the deceased, and that the procurement and assignment of the policy was also in good faith. If a request for charge had been offered, embodying the principle as to the insurable interest of the creditor in the life of his debtor, together with modifications of the same which would have adapted it to the exact issues of this case, then a different question would have been presented as to whether or not it should have been given; but in view of the issues as presented by the record, the strong evidence tending to show a lack of bona fides in the procuring of the insurance policy, the court was not bound to give this very broad and comprehensive, and possibly misleading, general abstract principle.

16. In the tenth ground of the motion for a new trial error is assigned on the refusal of the court to charge the principles set out in paragraphs of the request numbered 16, 17, and 18. These requests set out facts which the evidence tended to show in regard to the different theories as to the cause of the death of the deceased, and in each case, after reciting such facts, the charge requested included the principle that the law would presume death from such causes to be due to natural rather than criminal causes, and that the burden would be on the State to prove the criminal act beyond a reasonable doubt. The charge of the court was full, fair, and complete on the principles involved, and it was not error to refuse to repeat these principles, as requested, in connection with a different recital of facts.

17. In the eleventh ground of the motion movant complains that the court erred in refusing a written request, duly presented, to give in charge to the jury the following: " If you find from the evidence that the deceased's stomach at the time of his death was found to contain 14-2/5 grains of chloral, this of itself would not authorize you in finding that the deceased came to his death as a result of chloral poisoning. It would be your duty to inquire

further, and ascertain, if possible, from the evidence whether there were other vital organs of the deceased involved and affected, and to what extent; and whether or not they were so affected as to result in death. If, after a careful investigation of the evidence, you find that the State has proved to you beyond a reasonable doubt that the deceased had taken into his system a sufficient quantity of chloral to produce death, and that he died from the effects thereof, it would then be your duty to go further and ascertain from the evidence the time, place, and manner in which said chloral was taken by the deceased. I charge you, in this connection, that you are not authorized to go beyond evidence in the case in making these investigations." The court did not err in refusing to charge as requested. In addition to containing a repetition of the doctrine of reasonable doubt, the request contained expressions of opinion based upon the evidence, which the court could not legally make.

18. The twelfth ground of the amended motion for a new trial complains that the court erred in refusing a written request to give in charge the following: " If you find from the evidence that there has been a chemical analysis made of the contents of the stomach of the deceased, and the results of such analysis are before you as part of the evidence in the case, it is your duty to consider the extent of such analysis, and means and method used in conducting such analysis, and whether other and further approved test could have been used, and, if so, whether such further test would have more certainly established the presence or absence of chloral hydrate in the stomach examined; it being entirely a question with you to decide whether the test as relied upon by the State establishes in your minds, and beyond a reasonable doubt, the presence of chloral hydrate in the stomach." The court did not err in refusing to so instruct the jury. It was the duty of the jury to determine whether the evidence adduced for their consideration was sufficient to establish the guilt of the accused beyond a reasonable doubt. This request was argumentative in character; and, moreover, it would have been an attempt on the part of the court, in his charge, to guide the jury in their course of reasoning upon facts.

19. In the thirteenth ground the movant complains that the court erred in refusing to instruct the jury, when duly requested

in writing, as follows: "If you should find from the evidence that the presence of 14-2/5 grains of chloral hydrate in the stomach of the deceased has been established, you would not be authorized to assume that the finding of such quantity in the stomach establishes the presence of such drug in any other quantity in any other portion of the body of the deceased, or that it was present in such quantity as to produce death, unless it appears from the evidence, and beyond a reasonable doubt, that such drug, that is, chloral hydrate, was present in the body of the deceased, or had been administered to him in such quantities as to have produced death." The court did not err in refusing this request. The charge contained an expression of opinion on the evidence.

20. In the fourteenth ground the movant complains that the court erred in refusing to instruct the jury, when duly requested in writing, as follows: "In connection with counts No. 1 and No. 2, if you should find that the deceased came to his death as the result of the administration of chloral, it would be your duty to go further, and the evidence must connect the defendant with the administration of such drug, and you must find beyond a reasonable doubt, from the evidence, that such chloral had been administered by the defendant, or that he had caused the same to be administered to the deceased." The principle involved in this request was in substance included in the court's charge to the effect that the presumption of innocence continued with the accused until it was overcome by proof of guilt beyond a reasonable doubt, and that the burden of proof was upon the State to prove every material allegation in the indictment beyond a reasonable doubt. The caution in regard to reasonable doubt was many times stated throughout the charge. The law of circumstantial evidence was fully charged; and the jury was charged that in so far as the guilt of the defendant depends upon circumstantial evidence alone, the rule is that each separate fact or link which goes to make up the chain of circumstances from which the deduction of guilt is sought to be drawn must be clearly proved, and a fact not clearly proved should not be considered as a part of the chain of circumstances, but should be rejected by the jury; and further, all essential facts and circumstances necessary to show the commission of the crime and to connect the defendant therewith as the party committing the act must be clearly proved, and, when so proved,

must not only be consistent with the hypothesis of guilt but must exclude every other reasonable hypothesis save that of the guilt of the accused. The court explained the meaning of the term "corpus delicti," and instructed the jury that the burden was on the State to prove the corpus delicti beyond a reasonable doubt, "that is that the deceased was murdered by some one by one or more of the means and in the manner alleged in the indictment." The court further charged the jury that a person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident.

21. The verdict was supported by evidence, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Hines, J., who is disqualified.*