### 21060.   ROOKS v. THE STATE.

DECIDED JANUARY 15, 1931.

*W. I Geer, C. W. Worrill,* for plaintiff in error.

*B. T. Castellow, solicitor-general, Bond Almand,* contra.

BLOODWORTH, J. Plaintiff in error was indicted for murder and convicted of voluntary manslaughter. No one who saw the homicide was introduced as a witness at the trial. Henry Fish testified that he lived about forty yards from the home of the deceased at the time of his death; that he was at home when he heard the gun shot; that just after the report of the gun Mrs. Rooks, the wife of the deceased, called him and told him to come over there, "that Morris [the defendant] had shot his daddy;" that he went immediately to the home of the deceased; that when he got to the house he saw the car there; that the defendant "was taking the car out from under the shelter;" that it was the car of the deceased; that the defendant had a double-barrel shotgun, and took the gun off with him; that when witness asked the accused what the killing took place about he said that "his father got to raising hell about the women and wanted them to cook breakfast and that he had whipped two of his children and had his [defendant's] mother down on the floor choking and beating her, and he [the defendant] ran in there and shot hell out of him." This witness and others testified to hearing the defendant and the deceased on previous occasions making threats against each other. The defendant stated: "On the morning of May 7th of last year, a good while before day, my father passed my bedroom door and told me to go and feed up, and I told him that I was sick and that I had been taking medicine that night, and to please let Robert Lee—that is my younger brother—go and feed for me. Papa was going toward the dining room and kitchen when he called me and had to pass my bedroom door. . . A few minutes after that I heard one of the other children crying down in the kitchen or dining room, I could not tell which. It was not long after that before I heard my mother go towards the kitchen and dining room. . . My mother had not been in the kitchen long before I heard my father cursing loud and could hear terrible licks, and heard my mother scream, and about that time my little brother, Robert Lee, ran to my room and told me to come quick, that papa was killing mamma. I ran to papa's room and got the gun and ran to the

kitchen and dining room and heard papa cursing and licks being struck in the dining room, and heard my mother scream in there, and I dashed in the door and my mother was on the floor and papa was stomping her, and I fired. If I had not believed that he was trying to kill my mother, I would not have shot. He had her down on the floor, and looked to me like he was killing her. . . My father was a man who was very strong and weighed about 260 to 265 pounds. . . I did not make the threats that the witness say I did." The trial resulted in a verdict of voluntary manslaughter; a motion for a new trial was overruled, and a bill of exceptions was filed.

We will discuss the 1st headnote only. The evidence does not demand a finding that at the time of the homicide the deceased was endeavoring to commit a felony upon the person of his wife. It is true that the statement of the accused strongly authorized such a finding, but the jury had the right to reject that statement and to conclude from the evidence that the deceased, while assaulting and beating his wife, was not endeavoring to commit a felony upon her, and that the defendant killed his father without deliberation or malice, but upon a sudden and irresistible heat of passion, caused by seeing his mother being beaten by his father. See *Sheffield* v. *State,* 16 *Ga. App.* 287 (85 S. E. 253); *Hughes* v. *State,* 159 *Ga.* 828, 836 (127 S. E. 113); *Alexander* v. *State,* 118 *Ga.* 26 (44 S. E. 851). The court properly charged the law of manslaughter.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*