33346. CLAY *v.* THE STATE.

DECIDED APRIL 12, 1951.

*Barrett & Hayes, Harris, Henson, Spence & Gower*, for plaintiff in error.

*Paul Webb, Solicitor-General, Ogden Doremus, Reuben A. Garland, William Hall*, contra.

MacIntyre, P. J. ■ Special ground 1 is expressly abandoned, and the general grounds are not argued or insisted upon in the brief of counsel for the defendant and are treated as abandoned. *Shives v. Young*, 81 *Ga. App.* 30 (57 S. E. 2d, 874), and citations.

■ In special ground 2 error is assigned because Dr. William B. Scott, who had been sworn as a witness for the State, was allowed, over objection by the defendant, to answer the following hypothetical question: "Q. Doctor, if a person is struck about the head with a blackjack, or other heavy instrument of similar nature, and that person is in sound health and he is struck about the head with that object with great force, is that an act which, in its natural consequences, tends to destroy human life, in your opinion or not? A. Yes, I would say it tends to destroy human life." The objection then and there made was on the ground that there was no evidence to justify the hypothetical question in that it did not appear from any of the evidence what degree of force had been used; that no evidence indicated that "great force" had been used. On the hearing of the motion for a new trial, the defendant contended "that the hypothetical question propounded greatly enlarged upon the evidence with respect to the blows and the witness did of necessity base his answer upon counsel's incorrect representation of the evidence and gave a different answer to the one which he would have given if the degree of force had not been great; that the yardstick employed by the witness was founded in counsel's question and not on any justifiable evidence."

In special ground 3 the defendant urged the same objections to the following hypothetical question, propounded to Dr. Warren B. Matthews, who had performed an autopsy on Mooney, and was sworn as a witness for the State: " . . Doctor . . if a person is struck on the head with a blackjack or other blunt instrument of similar nature with great force, is that an act which, in its natural consequences tends to destroy human life, in your opinion?" The answer to this question was in the affirmative.

The wife of the deceased testified: "With the exception of being tired, on the third day of June, when I saw him [the deceased] the last time alive, my husband was in good health; he had been in good health, he had not complained of any illness at any recent time before the third of June 1949 [the day of his death].

H. S. Reese, a witness for the State, testified that he knew Ollie Moore, who worked at the theatre on the occasion in question, and testified further: "I saw him [Moore] out there. I was there at ten o'clock that night. As to whether I saw Mr. Leroy Mooney there; well, I saw who they said was him when he went in the theatre. When he went in, he dropped some money by the box office and he was down on his hands and knees picking it up; he asked the guy if he could go in and they told him he could and he went on in and sat down. I was around the theatre until midnight. I was there when the officers arrived and I saw them; one of them is here in court now, this fellow here, Mr. Clay. When the officers got there, they got out and went in and I went in behind them; they went down to the seat where Mooney was sitting, one went in on the same row and one in behind him, tried to wake him up. Ollie Moore was with the rest of us, all of us went in. I walked down the aisle when they went down; I went about half way down and I was behind them. When they got down there to the seat where LeRoy Mooney was sitting, they tried to wake him up first by shaking him, then they got him by the hair of the head and hit it back against the seat until he finally woke up and stood up. I guess they hit his head against the seat four or five times. As to whether it made a loud noise; I could hear it where I was but I was pretty close. After he woke up, when he got up, he kind of took a swing at one of the officers and then the other one come around and hit him in the back with the blackjack. I saw something in Clay's hand and it was black but I don't know whether it was a blackjack or a flashlight; he struck him in the back, back here. After that Mooney fell in the aisle, they got him up and drug him on out; both of them got him up. I went out behind them when they took him out. They put Mooney in the back of the car and Clay started to get in and as he sat down, the guy kicked the back of the

front seat up and hit Clay; he kicked the back of the seat other than the driver's seat. Then Clay got in the back seat with him and started beating him in the back of the head. I was about two or three feet from the car when that happened; I was standing right by him. When Clay got in the back seat, he just beat him in the back of the head and finally he kicked Mooney down in the floor board. You ask me to tell exactly what happened, every single thing that I saw happened. That's what I saw. He hit him four or five times, *he was swinging hard.* He was hitting him with a blackjack or flashlight, whatever he had in his hand; he was hitting him in the back of the head and he kicked Mooney down in the floor board and that's all I saw; Mr. Clay was the one who kicked Mooney down there. Mooney did not hit at Clay out there in the car, he had his face turned down on the seat, he was lying on the seat when Clay was beating him."

W. L. Waters testified that he noticed a crowd right around the theatre and that he saw a police car there and testified further: "It looked like the boy was getting into the back of the car when the officer hit him, I would rather say that either the boy's knees was on the running board or he was leaning over like if you was to go [to?] get in the back seat, laying your hand up on the front seat and this hand that way, and when the officer first hit him, he pushed back, like, and whenever he hit him the second time he fell down between the seats. I never did see the officer kick him at all, nor did I ever see him kick the officer." This witness testified further that when the officer hit Mooney the second time he slumped to the floor of the car and that when the officer hit him the third lick that was as much as he, the witness, could stand and he drove off. Other witnesses described the character of the weapon with which Mooney was struck and the forceful manner in which the weapon was wielded by the accused and the effect of the blows on Mooney and the nature of the wounds inflicted.

We think that the objection urged by the accused to these hypothetical questions, that there was no evidence to justify either of them in that it did not appear from any of the evidence what degree of force had been used and that no evidence indicated great force had been used, are not meritorious. *Fincher*

v. *Davis,* 27 *Ga. App.* 494 (4) (108 S. E. 905); *Southern Bell Telephone &c. Co.* v. *Jordan,* 87 *Ga.* 69 (3) (13 S. E. 202); *Flanagan* v. *State,* 106 *Ga.* 109, 112 (32 S. E. 80); *Yates* v. *State,* 127 *Ga.* 813 (4) (56 S. E. 1017); *Buckhanon* v. *State,* 151 *Ga.* 827, 834 (9) (108 S. E. 209); *Davis* v. *State,* 153 *Ga.* 669, 674 (7, 8) (113 S. E. 11); *Kimball* v. *State,* 63 *Ga. App.* 183 (2) (10 S. E. 2d, 240); *Wallace* v. *State,* 204 *Ga.* 676, 679 (51 S. E. 2d, 395); *Freeman* v. *State,* 190 *Ga.* 335 (1) (9 S. E. 2d, 236). Special grounds 2 and 3 are not meritorious.

■ Special ground 5. The defendant was charged with murder and the indictment was so drawn as to include the lesser crimes of manslaughter, assault with intent to murder, and assault and battery. The evidence authorized a charge on each of these offenses. After charging specifically upon the law of murder and manslaughter, including a specific charge on when the defendant would be justified in striking the deceased a mortal blow, the court charged as follows: "Now, in the event you find that the decedent did die, or was killed, but that the mortal blow was not struck by the defendant, or that whatever acts the defendant committed, if any, against the deceased did not result in the death of the deceased, then, as I say, you could not find the defendant guilty of any of the offenses as to which I have charged you [murder and manslaughter]. However, you may consider the following definitions of crime in the event you find the defendant did commit certain acts upon the person of the decedent although those acts did not result in the death of the said Mooney. *I charge you, gentlemen, that if you do not believe, beyond a reasonable doubt, that the alleged deceased, Mooney, died as a result of any act of the defendant, J. C. Clay, then you may consider whether the defendant committed either the offense of assault with intent to murder or the offense of assault and battery."* Here the court charged in effect that if the deceased did not die as the result of any act of the defendant (justified or not justified), he could not be convicted of murder or manslaughter. We can not see how this was harmful to the defendant. The court then charged the law on the subject of assault with intent to murder and assault and battery. The defendant excepts to that portion of the charge quoted above which has been italicized, on the ground that

"the term 'any act' of the defendant was broad enough to comprehend wholly justifiable acts—acts entirely necessary to effect the arrest. Admittedly, the man was highly intoxicated; it was the duty of the officers to arrest him; they were entitled to use such force (to do such acts) as was necessary to bring about the arrest. Under the charge, the court submitted the offenses of assault with intent to murder and assault and battery if death resulted from purely justifiable acts."

"The court can not crowd every legal principle involved in a case in a separate and distinct paragraph. Hence, 'instructions are considered as a series and it is not improper to refer in one instruction to another instruction in the charge.'" *Edwards* v. *A. B. & C. R. Co.,* 63 *Ga. App.* 212, 224 (10 S. E. 2d, 449). The excerpt of the charge here excepted to, when considered in its context, was not error for the reasons urged for in this particular whether the blow was mortal or not mortal, the excerpt, when considered in connection with the other parts of the charge, was performing one of the offices of a charge, which is to state to the jury the legal principles governing the facts presented. *Edwards* v. *A. B. & C. R. Co.,* supra. We do not think this ground is meritorious. See also, in this connection, *Heughan* v. *State,* 82 *Ga. App.* 640 (61 S. E. 2d, 685) ; *Anderson* v. *State,* 146 *Ga.* 193 (1) (91 S. E. 26).

■ In special ground 4 error is assigned upon the court's refusal to permit Dr. Jones to give his expert opinion based on the evidence set out in ground 4. The question and proposed answer of Dr. Jones which was first excluded by the court was later admitted. The exclusion of the question and proposed answer when first offered was no cause for a new trial as the evidence was later received. *Vaughn* v. *State,* 88 *Ga.* 731 (5) (16 S. E. 64) ; *Alexander* v. *State,* 118 *Ga.* 26, 29 (44 S. E. 851). This ground is without merit.

The court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*