## 37412. HOUSE *v.* CITY OF ATLANTA.

DECIDED NOVEMBER 18, 1958—REHEARING DENIED DECEMBER 9, 1958.

*Houston White,* for plaintiff in error.

*J. C. Savage, Newell Edenfield,* contra.

NICHOLS, Judge. 1. The plaintiff's petition alleged in part, with reference to his dealing with the city's land agent, the following: "That on said date, April 1, 1953, petitioner was put on notice by said City of Atlanta of the intention of said city to demolish said 395 Peachtree Street, N.E., within a reasonable time prior to the time said premises would be required for the actual construction of said expressway, which it intended to route through said premises in accordance with the plans for said expressway. That after April 1, 1953, petitioner remained in possession of said premises under said lease until December 15, 1954. That from time to time commencing in June, 1953, defendant carried on negotiations with your petitioner to determine the amount of just and adequate compensation due to petitioner. Said negotiations were carried on by defendant through its land

agent, H. B. Andrews. That during July, 1954, during the course of said negotiations with said land agent, petitioner sought to ascertain a definite date when petitioner would be required to vacate said premises for expressway purposes. At said time said land agent told petitioner he could give him no definite date, except that it would be only a few months. *Said land agent further stated at said time that the rentals that would accrue under said lease for the remaining few months that petitioner would be allowed to remain in possession of said leased premises would be considerably less than the compensation to which petitioner would be entitled from the city, because of said taking and damaging.* Thereupon and thereafter, commencing August 1, 1954, petitioner did not pay said monthly rentals as they accrued, *feeling that he might be forced to vacate at any immediate time and that whatever rental might accrue would be deducted from the compensation to be awarded him by defendant."*

The plaintiff assigns error on the judgment of the trial court sustaining the defendant's special demurrers to the italicized portions of the above quoted pleadings. The demurrer to the first italicized excerpt from the plaintiff's petition was based on the contention that the plaintiff had pleaded an ordinance of the City of Atlanta which set forth the duties of the "land agent" and such ordinance showed that the "land agent" had no authority to make the statements attributed to him. Such ordinance read as follows: "The land agent shall supervise and represent the city, generally in all negotiations and purchases of all real estate required by the city for any purpose whatsoever, excepting, however, such real estate required by the board of education of the city, procuring option or contract of sale when necessary. He shall supervise the procurement of easements, required for any purpose. He shall make recommendations as to the purchase price to be paid for real estate, the amounts to be paid as consideration for easements, adjustments to property or any other expenditure of moneys, for any purpose which may be under this supervision, to the committee of mayor and board of aldermen having supervision and control over the department of city government in which funds have been allocated and appropriated for such purchases or requiring such easements.

Any and all such recommendations shall be authorized by the mayor and board of aldermen."

From the above it is obvious that the "land agent" had authority to negotiate for the City of Atlanta, that the statements attributed to him were made in the course of negotiations for the "leasehold interest" of the plaintiff, and, while the "land agent" did not have final authority to procure property, he could certainly make the statement attributed to him here. The trial court erred in sustaining such demurrer.

As to the special demurrer to the second italicized excerpt of the plaintiff's petition, it is unnecessary to determine if the judgment of the trial court sustaining such demurrer was proper inasmuch as it is well settled that a party can always explain his actions, and whether such pleadings were struck on demurrer or not the plaintiff could still properly explain on the trial of the case his not paying the rent for the last few months that he was in possession of the premises. See *Royce & Co.* v. *Gazan*, 76 *Ga.* 79 (5), *Hale* v. *Robertson & Co.*, 100 *Ga.* 168, 169 (27 S. E. 937), *Alexander* v. *State*, 118 *Ga.* 26 (4) (44 S. E. 851), and *Atlas Auto Finance Co.* v. *Atkins*, 79 *Ga. App.* 91, 98 (53 S. E. 2d 171).

2. The testimony upon the trial of this action for damages by the owner of a leasehold estate against the City of Atlanta reveals that the plaintiff had a ten-year lease on premises on Peachtree Street being used as an optical establishment which had two years four and one-half months to run at the time he vacated the property; that his lease was nonassignable; that the city acquired title to the building in which the leased shop was located in April, 1953, and it was common knowledge at such time that this and adjacent property was to be demolished in order to make room for the expressway system; that the plaintiff negotiated with the city's land agent from June, 1953, on to December 15, 1954, when he evacuated the premises, and that in October, 1954, the city had written him a letter stating: "I have been instructed to vacate all property acquired by the City of Atlanta in connection with the construction of our expressway, lying east of Peachtree Street over to Piedmont Avenue, by December 31, 1954. The property you occupy at the above

address falls within this section. We are therefore, as of this date, asking that you surrender possession of this property on or before December 31, 1954." On the trial of the case the defendant presented no evidence. The plaintiff testified that he had made certain major improvements fitting the property for an optical business and that the value of the leasehold to him was $600 per month; that the rent was $200 per month, and that he had not paid any rent from August, 1954; that during that time he was negotiating with the city's land agent and they did discuss cancellation of the lease and he did ask the land agent when he would be able to get out; that his gross sales were in excess of $9,000 in 1947; $10,000 in 1948; $14,000 in 1949; $13,000 in 1950; $13,000 in 1951; $12,000 in 1952; $9,000 in 1953; $6,000 in 1954, and that the years of 1953 and 1954 showed a net loss; that the fact that he did not make a profit during the last two years did not show the lease was of no value to him, as a lot of his business came from repeat business; that he tried to save as much of the business as possible by transferring it to his downtown office, but he did lose a lot of it; that when he left he delivered the keys to the land agent and removed from the premises such property as he could salvage.

The fact that the plaintiff failed to pay rent for the last four and one-half months before leaving the premises could not be considered by the jury on the question of whether the defendant terminated his lease for nonpayment of rent because the city *as the plaintiff's landlord* never gave him a notice to this effect, and the trial court properly withdrew from the jury's consideration nonpayment of rent as a defense to the city. Such evidence could only be considered for the purpose of assessing damages, because, as the court charged, the sum of $900, (four and one-half months' rent), would properly be deducted from any amount found to be owing by the city to the plaintiff as damages.

The main question in the case, then, was whether the plaintiff's evidence sufficiently raised the issue of mutual rescission of the lease between the city and the plaintiff so as to authorize the court to charge on that subject.

The plaintiff, who was losing money because of the demolition

going on in the area, and the proposed razing of the building in which he was located, would not be forced to remain in the building in order to prosecute his claim for damages against the condemning authority. Removal from the premises in such a situation is not an abandonment, as established in the case of *Pause* v. *City of Atlanta,* 98 *Ga.* 92 (3) (26 S. E. 489, 58 Am. St. R. 290), as follows: "Where according to the plan of a proposed public improvement its completion must inevitably result either in the total exclusion of a leaseholder from his premises, or render the same so inconvenient as to render it valueless to him for the purposes for which it is leased, he may abandon his lease and vacate the premises whenever in the execution of the projected plan of construction the work has so far progressed as virtually to destroy his lease and thus prevent the enjoyment by him of his estate, and thereupon may sue for and recover from the city the diminution, during the remainder of his unexpired term, in the market value of the premises for rent, caused by the construction of such improvement."

All the plaintiff's testimony taken together shows that he had no intention of abandoning the lease to the city, as his landlord, in such a way as to waive his right for damages against the city as the condemning authority. In *Pause* v. *City of Atlanta,* 98 *Ga.* 92, supra, where the plaintiff leased from a third person and access to her leased property was blocked by city improvements of the adjacent street, it was held that the fact that she closed up the business and moved out did not show an abandonment of the leasehold interest so as to preclude recovery against the city. There was no direct testimony here by the city that the lease had been surrendered in such a manner as to preclude a claim for damages; such a rescission and waiver of the plaintiff's rights could result only from a definite agreement between the parties to that effect, since the plaintiff did have a right to move out under the circumstances, and all of the plaintiff's evidence shows that he, at least, had no intention of entering into any agreement with the city which would preclude his claim. Thus, the fact that the city was also the landlord has nothing to do with this case for the reasons that: (a) the city did not exercise its rights as landlord when it sought to evict the plaintiff, but did

exercise its rights as a condemnor, and (b) the plaintiff was not dealing with the city solely as a landlord in removing, but, under his testimony, was dealing with the city as a governing body. Therefore, his testimony that he "discussed cancellation of the lease" and "asked when he could get out" refer, not to abandonment by a tenant to a landlord, but to the entire dispute, including plaintiff's right of damages for his leasehold interest, which he was attempting to establish before his removal from the building. After this conversation no lease cancellation was ever effected. Then in October the defendant notified the plaintiff, *in its capacity as condemnor*, that the property would be required in December, and the plaintiff moved in December. The plaintiff testified that he moved because of this notice, and there was no evidence to the contrary.

Under *Pause v. City of Atlanta*, 98 *Ga.* 92, supra, the removal is not evidence of abandonment of the lease, and under such case the loss of profits incident to the condemning authority's activities may be considered in fixing the value of the leasehold interest. Therefore, the fact that the plaintiff lost money in 1953 and 1954 at a time when the city caused adjacent business houses to vacate and people to cease to congregate in the area by its known intention to demolish the buildings, and the fact that the plaintiff under those circumstances would have continued to lose money up to the end of his term, does not keep him from recovering against the city. The value of the lease should be fixed by its value under ordinary circumstances, not by its value or lack of value after the condemnor has in effect preempted and taken over the property for its own purposes.

This being so, there was no evidence to support the submission to the jury of mutual cancellation of the lease so as to preclude the plaintiff of his right to claim damages for his expulsion. From what has been said above, the verdict for the defendant was not demanded, and the trial court erred in overruling special grounds 4, 5, 6 and 7 of the amended motion for new trial, all of which grounds complain of the court's charge or failure to charge on the subject of mutual cancellation.

3. Special ground 8 complains of the exclusion of evidence tending to show the diminution in the value of fixtures and other

articles removed from the premises by the plaintiff at the time he vacated the premises.

"In such case, neither the profits of the business carried on upon the premises so leased, nor the cost of fixtures or other improvements placed therein, nor of articles purchased for the purpose of enabling the lessee to conduct such business, nor the diminution in value of such fixtures, improvements or articles as are removed by the lessee from the premises upon leaving the same, are recoverable as damages; but the increased value of the premises for rent in consequence of the putting in of such fixtures and improvements may be considered in computing the damages to the leasehold estate." *Pause* v. *City of Atlanta,* 98 *Ga.* 92 (4), supra. Accordingly, this ground of the amended motion for new trial is without merit.

4. Under the ruling on the demurrers, considered in the first division of this opinion, the evidence excluded from the jury's consideration, complaint of which is made in special ground 9, should have been admitted, and the trial court erred in excluding such testimony.

*Judgment reversed. Felton, C. J., and Quillian, J., concur.*